SUCCESSION OF MARIA JOSEPHA ROBERT—LOUIS PILIÉ, Dative
Testamentary Executor, and another, Appellants.

Robinson
2r 427
121 832

2r 427
124 267

Under art. 1682 of the Civil Code, a Court of Probate cannot refuse to order the
execution of a foreign will, when shown to have been duly proved before a compe-
tent judge of the place where it was received. The object of the law is to give to
foreign wills the same effect in the State, which they would have in the country in
which they were executed, where they have been duly proved in the latter. But
where an olographic will has been received by a foreign tribunal without proof of the
writing or signature, such proof not being required by the laws of the country un-
less the genuineness of the will be attacked, it cannot be executed here, without
being first proved according to law, before the proper court in this State.

Where by the laws of the country in which a foreign will was executed, the original can-
not be removed, the will may be ordered to be executed here, when the original
has been duly proved before a competent judge of the place where it was received,
on the production of a duly certified copy of the record of the proceedings and of the
evidence taken before the foreign tribunal, without the production of the original will ;
and where the testament, being olographic, and its genuineness not having been at-
tacked, the original was received abroad without proof of the writing or signature,
it will be ordered to be executed here on the production of a certified copy thereof,
and of testimony taken abroad, under a commission, establishing the genuineness of
the original.

A minor, not emancipated, who had lived abroad for fifteen years, but who was born in
this State, where his tutrix resides, is domiciled here. A minor, not emancipated,
can have no other domicil than that of his father, mother, or tutor. C. C. 48.

A domicil of choice can only be acquired by one who is *sui juris;* consequently it
cannot be acquired by a lunatic or minor.

The consent of the tutor to the marriage abroad of an unemancipated minor, does not
authorize the latter to change her domicil. Actual emancipation by marriage, could
alone effect a change. Until the act or event which gives the minor the right to change
his or her domicil has taken place, the domicil of the father, mother, or tutor, must
be considered that of the unemancipated minor.

As to moveables, the capacity or incapacity of a testator must be determined by the
law of his domicil.

A bequest by a testatrix, a minor natural child, without descendants or ascendants
except her mother, domiciled in this State, where all her property, with the
exception of her apparel and furniture, was situated, but who had lived for many
years in France, where she made her will and died, to one whom she intended to
marry, " of all which the law permits her to dispose of," will be construed to have
been made with reference to the law of this State, by which the whole of her estate
will go to the legatee, and not to that of France, by which she could have disposed of
but one half.

APPEAL from the Court of Probates of the Parish of New Or-.
leans, *Bermudez, J.* Maria Josepha Robert, a natural daughter

of Geneviève Robert, a free woman of color, was born in New
Orleans the 30th of July, 1816, and, with her mother's consent,
went to France in 1822, where she remained until her death, in
June 1837. She died unmarried, without descendants. In 1828,
a legacy exceeding $6000 accrued to her from the will of one
Dupuis, for the payment of which certain notes were given by the
heirs of the latter. M. J. Robert left an olographic will in the
following words:

"*Je donne et lègue à Monsieur Gustave Allier que je dois épou-
ser, tout ce dont la loi, me permet de disposer. Betz, le vingt Mai,
mil huit cent trente sept.*          MARIA JOSEPHA ROBERT."

Proceedings were had, at the request of the universal legatee,
before a French tribunal, and on the 18th of July, 1837, the tes-
tament, and its envelope were ordered to be deposited in the office
of a notary public, appointed by the president of the tribunal. An
inventory of the estate was made. The will was not proved in
France, by the laws of which country the hand-writing and signa-
ture of an olographic will are only required to be proved when its
genuineness is attacked. A copy of the will from the office of the
notary with whom it was deposited, was afterwards presented to
the Judge of the Court of Probates, by Louis Pilié, the agent of
Jean Charles Gustave Allier, the universal legatee. The court
ordered it to be recorded, and executed, and appointed Louis Pilié
dative testamentary executor. On an appeal from the Commer-
cial Court in the case of *Robert* v. *Allier's Agent*, 17 La. 4, it
having been decided that the proceedings had in France did not
amount to the proof required by art. 1682 of the Civil Code, and
that the will could not be carried into effect without being proved
before the Court of Probates of New Orleans, the testimony of three
witnesses was taken, under a commission, in France, by whom
the genuineness of the will was established. The testimony of
the notary with whom it was deposited, taken under the commis-
sion, also proved, that, by the laws of France, the original will
could not be taken from his office. On the return of this commis-
sion, the order for the registry and execution of the will and the
appointment of Pilié as dative testamentary executor, was ratified
and confirmed, and the notes given for the legacy of Dupuis order-
ed to be delivered to the executor, to be administerd by *him as*

## JUNE, 1842. 429

Succession of Maria J. Robert—Pilié. Executor, and another, Appellants.

the property of Maria Josepha Robert. The executor subsequently presented a petition to the Court of Probates, alleging that he had administered on the estate, which owed no debts except the costs of settlement, and that, under the will, the whole of the property, after deducting the costs, belongs to Allier, and praying that a tableau, made in conformity, might be homologated, and for his discharge. Geneviève Robert, reserving her right to appeal from the order for the execution and registry of the will, opposed the homologation of the tableau, alleging that, even if the will should be declared to be valid, she would still be entitled to one half of the succession; and she prayed for its amendment accordingly. The judge of the lower court having ordered the opponent to be placed on the tableau as entitled to one half of the succession, the executor appealed.

By agreement of counsel the whole case is submitted to the court, as if an appeal had been taken from the judgment ordering the execution of the will and the delivery of the notes to the executor.

*L. Janin*, for the appellants. It is admitted that the commission which was executed in France, establishes, by the clear and precise testimony of three witnesses, the genuineness of the testament. The notary in whose office it was deposited by order of court, testifies that the law would not permit him to part with the original. Such is also the law of Louisiana.

The appellee contends that the execution of an olographic testament can only be ordered in this State, when the original is produced, and proved by witnesses known to the judge, and appearing before him in person. Civ. Code, art. 1648.

If this were true, the olographic testament, the most favored by our law because the least exposed to fraud, would be most easily defeated. Arts. 1648 and 1649 are not negative laws. They provide for the more common case, where the testament itself, and competent witnesses can be produced before the court, and prescribe the mode of proceeding in that case. They do not say, that the will shall be proved in no other manner. In the same manner all other laws enacted by our legislature concerning the evidence required in support of a claim, contemplate the presence of the witnesses and express themselves accordingly. But it can-

not be denied that it is an universal principle of our civil jurispru-dence, that whatever can be proved by oral testimony, can be proved also by commission. The general principle once esta-blished, it was not necessary to allude to it, whenever the subject of proof was touched.

Whatever proof satisfies a foreign tribunal, is conclusive, in this State, of the genuineness of the will. Should less weight be given to the testimony obtained under the supervision of our own courts, and amounting to the degree required by our law? The Code lays down general rules, and does not, nor could it trace out the endless complications of human affairs. The liberal provisions of arts. 1581, 1681, 1682, are quite incompatible with the narrow policy advocated by the appellee. According to her views, if it be imagined that the jurisprudence of other countries resembles our own on this subject, a testament which might affect property in ten different countries, would be inoperative in nine out of the ten, if the law of the country where it was first produced, should re-quire it to be deposited in a public office.

The appellee maintains, that the testatrix was still a minor be-tween twenty and twenty-one years of age ; that the capacity of disposing *mortis causa* of moveable property, is determined by the law of the testator's domicil ; that the testatrix was domiciled in France ; that by the laws of that country a minor over sixteen years can dispose only of one-half of her property (Code Nap. 904) ; and that, therefore, admitting the validity of the will and the suffi-ciency of the proof of its execution, one-half of the estate would still go to the appellee, who is the natural mother of the testatrix.

The domicil of the testatrix was not in France, but in Louisiana. In respect to moveable property, the law of the domicil of the tes-tator determines his capacity or incapacity. Story, 391. 4 Burge, 579. But Maria Josepha, the minor testatrix, although she resided in France, had her domicil in Louisiana, where she was born, and where her natural mother and tutrix, had always been and was then residing. A minor can have no other domicil but that of his father, mother, or tutor. Our law, Civ. Code, art. 48, is express on the subject ; nor does it differ from the laws of other countries. Story, 44. 1 Burge, 38, says, " the domicil of choice being that which the person himself establishes, it can only be acquired by

him who is *sui juris*. It cannot, therefore, be acquired by a lunatic or a minor." Burge quotes Voet. lib. 5, tit. 1, No. 100. Pothier, Introduction aux Coutumes, 3.

The grounds relied on for inferring a change of domicil are, that the testatrix was sent very young to France to receive her education, and remained there fifteen years, and that the mother and natural tutrix consented to her projected marriage with Allier. On the last circumstance most stress is laid. It was a consent to an act which would have produced a change of domicil. The change of domicil would not have been effected, except by the marriage. As there can be no such thing as a constructive marriage, so there can be no constructive change of domicil by a marriage which, though contemplated, does not take effect. The wife looses her original, and acquires the husband's domicil, because she is *en puissance de mari*. The mother, by consenting to the marriage, cannot be considered as having affected the domicil of her daughter, for if the marriage took place, the mother lost all control over her daughter's domicil, and if it did not, then the consent, which was clearly a conditional one, must be looked upon as withdrawn on account of the failure of the condition.

Finally, it is said, that although the testatrix's domicil should be considered to have been in Louisiana, still her intention and the construction of the will is to be governed by the law of the country where she resided *de facto*.

The will is in these words: " *Je donne el lègue à Monsieur Gustave Allier, que je dois épouser, tout ce dont la loi me permet de disposer.*" If we were right in saying that the capacity of the testatrix is governed by the law of her domicil, (as to moveables,) and this is granted, and that her domicil still was in Louisiana, then this pretension of the appellee is entirely unsupported. The words of the testament leave it doubtful to what law the testatrix referred. Every one is presumed to know the law affecting his acts, and the testatrix, in the absence of proof to the contrary, must be presumed to have referred to the law of Louisiana, and to have known that she was governed by that law, though she might not have known how far that law restrained her capacity of disposing. But the appellee calls upon the court to presume, that the testatrix did not know by what system of laws her case was governed. " The

law of the place of the domicil in many cases affords the rule of construction, when the testator has used expressions, which are either ambiguous, or of different significations in different countries." 4 Burge, 590. 2 Id. 853. The testatrix intended to bequeath all her property, without exception, to Allier, her lover and intended husband. She had no property in France beyond her wearing apparel and some furniture, as is shown by the inventory made in France.

*Benjamin*, contra.

SIMON, J. This controversy arises out and is the sequel of the case decided by this court between the same parties, and reported in 17 La. 10. The parties went back to the Court of Probates, to proceed on the rule which we thought necessary to notice in our former decision, and which had been taken by the dative testamentary executor, during the progress of the previous litigation before the Commercial Court. The first step that was taken before the court *a qua*, after the rendition of our decree, was the issuing of a commission to prove the hand-writing of the testatrix in France. Three witnesses were examined, from whose testimony no doubt can be entertained as to the genuineness of the testament; wherefore it was ordered by the inferior court, that the rule taken by the testamentary executor should be made absolute, and that the proceeds of the several notes originally in dispute between the parties, should be paid over to him, to be by him administered as property belonging to the estate of Maria Josepha Robert, reserving to Geneviève Robert the right of claiming whatever amount she might be entitled to under the will.

A few days after this decree was rendered, the executor filed an account or tableau, in which, after deducting the privileged costs and expenses, he disposes of the balance of the funds in his hands in favor of the universal legatee. The testatrix' natural mother, being entirely excluded, filed an opposition to this tableau on the ground that, supposing the will to be valid and executory, she is nevertheless, entitled to inherit one-half of her daughter's estate. This opposition was sustained by the judge *a quo*, who ordered the tableau to be so amended as to place the opponent thereon as entitled to one-half of the residuum of the estate, and Gustave Al-

lier to the other half; and from this judgment, the dative testamentary executor, and the universal legatee have both appealed.

The appellee has prayed, in her answer to the petition of appeal, that the judgment ordering the execution and registry of the will may be reversed, and the succession of her deceased daughter decreed to belong to her as legal heir.

This case presents three distinct and important questions of law for our consideration, to wit : *First*, was the olographic testament in question sufficiently proven before the Court of Probates, although the original will was not produced and recorded ?

*Second*, Where was the legal domicil of the testatrix, who was a minor, above sixteen years of age, at the time the will was executed ?

*Third*, By what law is her capacity to dispose to be governed, and under what law is the extent of her disposition to be determined and ascertained ?

I. The genuineness of the will cannot be contested, as it is established by the clear and positive testimony of three witnesses, well acquainted with the hand-writing of the testatrix; and the notary in whose office it was deposited by order of a French tribunal, testifies that the law of France does not permit him to part with the original. This provision of the French law is, in this respect, similar to our own. Civ. Code, art. 1650. Code of Prac. art. 941. So that there is clearly an absolute impossibility of procuring the original of the will under consideration, and of producing it for the purpose of being deposited in the probate judge's office according to law. But is this uncontrollable circumstance to have the effect of defeating the olographic will of the deceased ? We think not. We said in our first decision, 17 La. 18, that " the judge of probates ought not to order the olographic will of Maria Josepha Robert to be carried into effect, without its being first proved before him according to law, *unless satisfactory evidence is produced to show that it has been duly proved in France.*" This opinion was based on art. 1682 of the Civ. Code, in which it is positively enacted that our courts cannot refuse to order the execution of a foreign will, if it be established that it has been duly proved before a competent judge of the place where it was received. Surely, it would be vain to contend that the proof here

produced would have been insufficient in France, if required there, to establish the genuineness of the will; and why, if sufficient there, should not such proof be considered as conclusive in this state? Less weight or effect ought not to be given to the testimony obtained under the supervision of our own courts, than to evidence taken in a foreign country, to satisfy a foreign court; for, if under the law of France, it had been required to prove the genuineness of the will in question, its execution would have been ordered here on the mere production of a duly certified copy of the record of the proceedings had, and of the evidence received before the competent French tribunal, without the necessity of producing the original will. The policy of the art. 1682 is very obvious. Our law, on this international subject, seems to have intended to give the same effect to foreign wills in this State, as they would have in the country in which they were received or executed, provided they have been duly proven there; yet, it is agreed that where no proof has been adduced in a foreign country, because the law of that country did not require it, we should not be satisfied with the same degree of evidence that would have been sufficient to satisfy the foreign tribunal, and even our own courts under the first branch of art. 1682, and that we should exact a compliance with an impossibility. We cannot assent to this proposition. The main object of our law on this subject, is to guard and protect our citizens against any fraud that might be committed to their prejudice, if it did not require the proof of the genuineness of foreign wills; but when this has been satisfactorily established, such object is undoubtedly obtained, and it would be superfluous to require more.

It has been insisted, however, that arts. 1648 and 1649 of our Code show that the original will ought to be produced, in order to be identified with the testimony of the witnesses who have recognized it, and that, in its absence, the evidence would be incomplete. This position would perhaps be correct, if the witnesses were in personal attendance before the Court of Probates; but these articles are not negative laws; they do not say that no other kind of proof shall be admitted; and we doubt very much whether, under their application, if an olographic testament executed here, had, by some accident, been destroyed before being legally proved,

a true copy of it, identified with the original by the testimony of two credible witnesses who had seen both, and who would be able to swear to the genuineness of the original in the manner pointed out by law, should not be considered as a sufficient compliance with the provisions of our Codes. Surely, we are not prepared to say that, in such a case, the legal rights acquired under the will would also be defeated, and that the party would be left without remedy. This is indeed an analogous and even a stronger case ; and as, in our opinion, our law makers cannot have intended to require an impossibility, we must conclude that, under such circumstances, the proof furnished by the appellants, is a sufficient compliance with the requisites of the Codes, and that the inferior judge did not err in ordering the execution of the will under consideration.

II. The testatrix was a minor above sixteen years, under the authority of her natural mother, when she executed the testament, and although she resided in France, where she had been sent for the purpose of receiving her education, it cannot be controverted that she had her legal domicil in Louisiana, where she was born, and where her mother and tutrix was then residing. Under our law, Civ. Code, art. 48, it is clear that a minor, not emancipated, can have no other domicil but that of his father, mother, or tutor ; and in this respect, it does not differ from the laws of France. Code Nap. art. 108. Story, Conflict of Laws, No. 46, says, that the place of birth of a person is considered as his domicil, if it is at the time of his birth, the domicil of his parents ; and this is called the domicil of nativity. But *if he is an illegitimate child, he follows the domicil of his mother. Ejus, qui justum patrem non habet, prima origo a matre.* Digest, lib. 50, tit. 1, l. 9. This domicil of birth of minors continues until they have obtained a new domicil ; and Burge, 38, says, that " the domicil of choice being that which the person himself establishes, can only be acquired by him who is *sui juris.* It cannot, therefore, be acquired by a lunatic or a minor." Burge quotes Voet, lib. 5, tit. 1, No. 100. Pothier, Introduction aux Coutumes, 3.

But it is urged that the testatrix' domicil was changed, because she had resided about fifteen years in France, and because her mother had consented to her projected marriage with Gustave Al-

lier ; and this last circumstance is construed as a consent to an act which would have produced a change of domicil.   It is true that this event was in contemplation, and, if it had taken place, would have had the effect of emancipating the testatrix ; but it never did happen, and consequently she never was emancipated.   Now, our law, art. 48, speaks of the domicil of minors *not emancipated*, and thus, it is clear that nothing but an actual, and not a projected emancipation, could operate so as to authorize her to change her domicil.   Story, No. 46, says, minors are generally deemed incapable, *proprio marte*, of changing their domicil during their minority, and therefore retain the domicil of their parents.   This is undoubtedly a correct doctrine, which we have often had occasion to recognize ; and it is meet for us to establish as a settled and general rule, that until the act or the event which is to have the effect of giving to a minor the right of changing his former domicil, and of selecting and acquiring a new one, has taken place, the domicil of the parent or tutor must be considered as that of the unemancipated minor.

III. It is first necessary to remark, that the estate of the testatrix is composed exclusively of moveables ; and it is undoubtedly a clear and correct principle on the subject of the conflict of laws, that, with regard to moveables, the capacity or incapacity of a testator is to be determined by the laws of his domicil.     Story, No. 383, says, " It follows as a natural consequence of the rule which we have been considering, (that personal property has no locality,) that *the laws of the owner's domicil* should in all cases determine the validity of every transfer, alienation, or *disposition*, made by the owner, whether it be *inter vivos* or *post mortem.*"     This rule is established by the learned judge on the authority of several distinguished jurists and commentators, who use language equally general and exact.     Among whom we find Pothier, Merlin, and others, who all agree in asserting the principle to be so well established, that no one has dared to question it ; and there is, says Judge Story, an entire harmony on this point between foreign and domestic jurists.

But it has been strenuously contended that although the testatrix' legal domicil was in Louisiana, and although her capacity to dispose of her moveable estate is to be governed by the law of

her domicil, her will ought to be construed, and her intention ascertained and determined in reference to the law of France, where the testatrix intended that her will should take effect. The disposition in controversy is in these words : " *Je donne et lègue à M. Gustave Allier, que je dois épouser, tout ce dont la loi me permet. de disposer.*" If this disposition *mortis causa* is to be regulated by the laws of Louisiana, the whole of the estate of the deceased will go to the universal legatee (Civ. Code, art. 1464); whilst under the law of France, he would only be entitled to one-half thereof. Code Nap. art. 904. Now, it seems to us clear, that the testatrix intended to bequeath all that she was capable of giving, and that nothing in her disposition, or in the expression of her last will, indicates that the law by her alluded or referred to, if indeed she alluded or referred to any particular law, was the law of France rather than that of Louisiana. It is true her residence *de facto* was in France, but she had no property there, beyond her wearing apparel and some furniture ; and if she had really intended to dispose according to the law of that country, would it not have been easy for her to ascertain exactly the extent of her capacity there ? Her disposition shows an entire ignorance of the law that was to govern her capacity ; and we may fairly presume that she did not know which was to have that effect. But certain it is that it evinces clearly the intention of bequeathing to her universal legatee, to her lover, to her intended husband, all she could legally give him, and the whole of her estate if it happened that she was by law permitted to do so. Her will contains no restriction, no limitation. Her intention was undoubtedly to dispose to the full extent of her legal capacity ; and if so, how could her intention be separated from her capacity ? Is not the one, on the contrary, closely connected with the other ? We think so ; and as, from the expressions used in the will, it cannot be doubted that the testatrix intended to carry her liberality to the full extent of the law that was to govern her capacity ; and as it is a settled rule that such law is that of her domicil, which was in Louisiana, we are constrained to conclude that her disposition must prevail as a legacy of her entire moveable estate.

Under this view of the question, that part of the judgment of the

inferior court, allowing one-half of the estate of the deceased to her natural mother, must be reversed.

It is, therefore, ordered, that the judgment of the Court of Probates, commanding the will of Maria Josepha Robert to be executed, be affirmed; that the judgment subsequently rendered and appealed from, be annulled; that the opposition filed by the testatrix' natural mother, be overruled; and that the account or tableau filed by the dative testamentary executor, be homolgated and approved. The costs in both courts to be borne by the opponent and appellee.