THOMPSON
v.
KELSO.

---

## SUCCESSION OF M'CANDLESS.

3    579
121   832

A testament, disposing of moveables and immovables situated here, made in another State of the Union, by a resident of this State, temporarily absent from home, and who afterwards returned and died at his domicil in this State, if clothed with all the formalities prescribed for the validity of wills in the place where it was executed, will be valid here. C. C. 1588, 1589. Art. 1589 cannot be confined to the cases of foreigners, or of testaments disposing only of moveables; nor is there any inconsistency between it and art. 1581. *Per Curiam :* If a testament contain a substitution or *fideicommissum*, which our law prohibits, we should hold such a disposition null, though it might be valid by the laws of the State where made. But in what relates to the exterior form, not the substance of the testament, nothing in our Code authorizes a distinction between moveables and immovables.

The third clause of art. 10 of the Civil Code refers, not to the form, but to the substance of a testamentary disposition, permitting the validity of such a disposition of movables to be regulated by the laws of a foreigner's domicil.

APPEAL from the District Court of Rapides, *Cushman*, J. The facts of this case are stated in the opinion of the court, *infrd.*

*Flint* and *McWaters*, for the curator, appellant. The only question in this case is, whether a citizen of this State, and who is actually in this State at the time of his death, can dispose, by will, of his property in this State, especially if immovable, except under the forms and in the mode perscribed by our laws. The counsel who maintain the validity of the will, rely on art. 1589 of the Code. This article, if it have any bearing on the case, only refers to non-residents, and not to citizens, and is checked and controlled by the general principles and plain provisions of the Code, which clearly show that the laws of this State never contemplated that its own citizens should dispose of property within its limits, except under the forms prescribed by its own laws. It is a general principle that, moveable property is governed by the law of the domicil of the owner; it is an equally well established principle that immovable property is governed by the *lex rei sitæ*. The third paragraph of article 10 of the Code, allows a citizen of another State to dispose by will of his property in this State, free of the trammels and forms of the law regulating the effect of acts passed in one country to have effect in another. The exception is as to moveable property. A citizen cannot dispose of immovable property situated in this State, in a manner different from the forms prescribed by our laws. 2 Rob. 258.

Our Code, after describing the forms necessary for the validity of nuncupative testaments by public act and under private signature, proceeds to enumerate those necessary for an olographic will. Art. 1581. To be valid, it must be entirely written, dated, and signed, by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State. Now, in relation to the other three forms of wills, there is no similar provision that they can be made out of the State. The maxim, "inclusio unius est exclusio alterius," applies.

An attempt is made in this case to escape the general principle of law that, immovable property in a State can only be disposed of according to the laws of that State, by contending that, this rule goes only to the effect of an act purporting to affect real property, and not to the form of the act. This distinction is founded upon an assumed meaning of the word effect, and a forced separation

SUCCESSION
OF
McCANDLESS.

of the formalities accompanying a will from the dispositions which it contains. But a careful examination of the instances in which the word effect is employed in the Code, will show that no such meaning was attached to it by the lawgiver; but that it was used to denote the entire operation and force of the act in every point of view, and not merely the dispositions of the act, as distinct from the form in which they are clothed. The provisions of the Code from arts. 1590 to 1597 inclusive, show conclusively that no departure was ever contemplated from the fixed and prescribed forms of testaments, except in the cases embraced within the foregoing articles, none of which apply to this case.

*Elgee* and *Hyams*, contrâ. The will is clothed with the formalities prescribed for the validity of wills made in the State of Mississippi. Civil Code 1589, 483, 1681. 6 Rob. 239. 5 Mart. N. S, 48.

The defendant contends that, under article 483 of the Civil Code, the prohibition relates as well to the form as to the effect of the disposition, and that a will, though made out of Louisiana, should be made according to the forms required by her laws. It is clear that this construction of art. 483, if true, would violate the provisions of art. 1589; and it has been decided to the contrary, in the cases above quoted. See Story's Conflict of Laws, sec. 372, note 2, pp. 623, 624, and 625; note no. 3 to sec. 474; sec. 371, b. c. d. e.; sec. 372, a. b.; sec. 435, note 2; sec. 437 a 439, 440; note 2 to sec. 441; sec. 441 a; secs. 442, 443, 443 a, 444, 444 a. He shows that, under the civil law, the form of the will is to be decided according to the law of the place where made, whether it relates to moveables or immovables situated in another country. This is the doctrine of our law whatever principles to the contrary may prevail in countries governed by the common law.

The judgment of the court was pronounced by

SLIDELL, J. *Hugh McCandless*, a brother of the deceased, presented to the court at Rapides, charged with the succession, a will constituting him sole legatee, and prayed that it might be recognized as the last will of the deceased, and executed accordingly. This the curator opposed, upon the ground that the testament was null for defect of form.

The will was made in Mississippi, and it is admitted by the curator that it is clothed with all the formalities required by the laws of that State. If, however, its validity in point of form be tested by our laws, it is conceded by the legatee that the will is null. The succession of *McCandless* consists partly of slaves, which our law considers as immovables, and partly of moveables. All were situated or found, at the time of his death, in the parish of Rapides. In that parish he had been domiciled for many years, and there died. In the year 1832, he went from Louisiana to Mississippi, apparently for a temporary purpose. He remained there a few months, and while there fell sick, and, on the day before he started for his home in Louisiana, he made the will. He continued after his return to be a citizen and resident of Louisiana, and died in Rapides, in 1845.

Our Code, after enumerating the three classes of wills—nuncupative, mystic, and olographic—and minutely prescribing the formalities to be observed in making them, declares, in article 1588, that "the formalities to which testaments are subject by the provisions of the present section must be observed, otherwise the testaments are null and void." But the article which immediately follows, declares "that testaments made in foreign countries, or in the States and other territories of the Union, shall take effect in this State, [auront leur exécution dans cet Etat,] if they be clothed with all the formalities prescribed for the validity of wills in the place where they have been respectively made."

We find nothing in these expressions which would authorize us in restricting the article to the case of foreigners, or of moveable property. The language is unqualified, both as to persons and property; and fairly embraces wills made abroad, by our own citizens, of immovables, situated within our territorial limits. Why should we make distinctions which the law has not made?

Slight reflection will show the impropriety, as well as illegality, of excluding our own citizens from the benefit of this provision. A numerous class of them habitually leave the State for a short time during the hot months, for the purposes of health or pleasure. Others are called away from time to time by the necessities of business. A citizen thus absent may be visited by sudden sickness, and could rarely find in the other States of the Union, much less in a foreign country, persons competent to advise him with regard to the formalities required by our law. It was therefore reasonable to permit him to adopt the solemnities known and required by the law of the country where he is sojourning. To refuse him that privilege would be to deprive him, under certain circumstances, of authority over that which is his own, and which the law, as well as natural justice, permits him to dispose of.

But it is said that a previous article of the Code, in treating of the olographic will, and after having defined it as that which is entirely written, dated, and signed by the testator, and subject to no other formality, declares that, "it may be made anywhere, even out of the State." And, since in the relation to the other forms of will, there is no provision that wills made according to these forms out of the State shall be good, the rule "Inclusio unius," etc. is invoked. We do not see the force of this reasoning. The légatee asks that the will be sustained, not because it has the form of a nuncupative or a mystic will, but because it is a testament clothed with all the formalities prescribed for the validity of wills in the State of Mississippi, where it was made. If this had been an olographic will made in Mississippi, the legatee would have asked its judicial recognition here, not because the laws of Mississippi recognize that form— which it seems they do not—but because the lawgiver had said that the olographic will should be respected, even though made in a foreign country. There is no inconsistency between articles 1581 and 1589; and both must be so interpreted as to receive their full effect.

We have already observed that the language of article 1589 is general in its terms, and not restricted to particular kinds of property. Nor do we find in other parts of our Code, any language which would authorize us to confine to moveables, the operation of testaments made abroad in the foreign form. Unquestionably, in a proper sense, it is true that immovable property is controlled by the law *rei sitæ*. And if, for example, this testament contained a substitution, or a *fideicommissum*, which our law prohibits, we should hold such disposition null, even though it might be valid by the law of the State where the will was made. But in what relates to the exterior form, not to the substance of the testament, we find nothing in our Code authorizing a distinction between moveables and immovables.

The third clause of article 10 has been cited, but seems to us irrelevant to the present question. We understand the clause as referring, not to the form, but to the substance, of a testamentary disposition, and permitting the validity of the testamentary disposition of moveables to be regulated by the law of the foreigner's domicil.

We may remark, in conclusion, that article 1589, as interpreted, accords with what appears to be the prevailing doctrine of the continental jurists. See also 6 Robinson, 239. *Judgment affirmed.*