(46 South. 873.)

No. 16,895.

Succession of DRYSDALE.

(May 11, 1908. On Rehearing, June 8, 1908.)

1. WILLS—PROBATE—WILL MADE IN FOREIGN COUNTRY.

The last wills and testaments of persons domiciled in Louisiana should be proved or probated primarily by the courts of this state. The fact that they may have been made by such persons in a foreign country or in a sister state does not do away with the necessity of their

being primarily proved or probated by the Louisiana courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 586.]

**2. SAME.**

Article 1689 of the Revised Civil Code was not intended to apply, nor does it apply to the probating of wills of persons who were domiciliated in and died in the state of Louisiana, which happen to have been made in a foreign country or a sister state. Such wills must be primarily proved or probated in Louisiana.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 586.]

**3. SAME—PROBATE IN FOREIGN COUNTRY.**

The courts of Louisiana are not authorized to order the execution of an alleged will of a person domiciled in Louisiana on the production before them of an order of a foreign country, probating the same.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

In the matter of the succession of Julia P. Drysdale. From a decree probating the will, her legal heirs, Mary A. Pike and John T. Pike, appeal. Reversed and remanded.

Woodville & Woodville, for appellants. Percy Sommer Benedict and Aloysius Joseph Cahill, for appellees.

### Statement of the Case.

NICHOLLS, J. Mrs. Julia P. Drysdale died in New Orleans on August 16, 1905. It is conceded that this city was her domicile. All of her property, real and personal, was situated there with the exception of a burial lot in Ontario, Canada. She had no forced heirs. Her legal heirs were her sister, Mary Ann (Mollie) Pike and her brother, John Thomas Pike, both residents of New Orleans. She was supposed to have died intestate.

On August 21, 1905, these legal heirs filed in the civil district court a petition in which they alleged the death in New Orleans of Mrs. Drysdale; that she was domiciled in that city; that there were no debts due by said estate except the general expenses of the deceased; that they were desirous of taking an inventory of the estate; that there was deposited in the Canal Bank a bank box in her name, and they desired that an inventory be made of the contents of said box and subsequently that they be given possession of said box; that she had left neither father nor mother nor descendants, and that petitioners were her sole heirs in law. They prayed that an inventory of the estate be made, that the Canal Bank permit the notary to make an inventory of the bank box.

On reading this petition the court granted the orders prayed for.

On February 12, 1906, Bernard McCloskey, a resident of the city of New Orleans, and Thomas H. P. Carpenter, a resident of the province of Ontario, Canada, presented a petition to the civil district court in which they alleged that since the opening of this succession, there had been found a will of the deceased in nuncupative form under private signature, executed in the province of Ontario, Canada, on the 14th of September, a certified copy of which they annexed to their petition.

That said will had been duly presented to and probated by the Surrogate Court of County Wentworth, Ontario, Canada, on the 2d day of January, 1906, as appeared by a certified copy of the probate thereof attested by T. H. A. Beque, register of said surrogate, county of Wentworth, and that the signature of said Beque thereunto attached was certified to by Richard Butler, Esq., Vice Consul of the United States, residing at Hamilton, Canada, as the whole would more fully appear by said probate and said certification annexed to their petition; that thereunder petitioners were appointed joint testamentary executors, and they thereby (in their petition) accepted said trust; that an administration and execution of the will was necessary. They prayed that the will and the probate therewith presented be ordered filed, registered and made executory under the laws of the state of Louisiana; that petitioners be con-

firmed as testamentary executors; that letters testamentary issue in their favor as such, upon their taking the oath prescribed by law. They further prayed for such other orders, judgments, and decrees as might be necessary in the premises and for general relief.

On the 13th of February, 1906, the court signed an order to the effect that the last will and testament of the deceased duly probated in the province of Ontario, Canada, on the 14th day of September, 1903, a duly certified copy of which was filed herewith be approved, registered, and executed according to law; that Bernard McCloskey and Thomas H. P. Carpenter be confirmed as executors thereunder, and that letters as such issue on their taking the oath as prescribed by law.

Accompanying this petition and order and filed on the same day was what purported to be the copy of the said last will and testament, also the following instrument:

"Canada, Province of Ontario.

"In His Majesty's Surrogate Court: Be it known that on the second day of January, in the year of our Lord one thousand nine hundred and six the last will and testament of Julia Pike Drysdale, late of the city of New Orleans, in the state of Louisiana, widow, deceased, who died on or about the nineteenth day of August in the year of our Lord one thousand nine hundred and five in New Orleans, in the state of Louisiana, and who at the time of her death had no fixed place of abode in the province of Ontario, but leaving at such time property in the said county of Wentworth, was proved and registered in the said Surrogate Court, a true copy of which said last will and testament is hereunto annexed.

"And that the administration of all and singular the property of the said deceased and any way concerning her will was granted by the aforesaid court to Thomas Henry Pettit Carpenter, of the township of Saltfleet in the county of Wentworth, fruit grower, and Bernard McCloskey, of New Orleans, in the state of Louisiana, attorney at law, the executors named in the said will, they having been first sworn well and faithfully to administer the same by paying the just debts of the deceased and the legacies contained in her will so far as they are thereunto bound by law, and by distributing the residue (if any) of the property according to law, and to exhibit under oath a true and perfect inventory of all and singular the said property, and to render a just and true account of their executorship when thereunto lawfully required."

Attached thereto was the following certificate:

"United States Consulate, Hamilton, Canada.

"I, Richard Butler, Vice and Deputy Consul of the United States of America, at the city of Hamilton in the province of Ontario, Dominion of Canada, do hereby certify that the paper writing hereunto annexed is the original probate of the last will and testament of Julia Pike Drysdale, late of New Orleans, in the state of Louisiana, widow, deceased; that the signature of T. H. A. Beque thereunder attached is the true and correct signature of the Registrar of the Surrogate Court of the county of Wentworth in said province of Ontario, Canada; that the seal thereunto attached is the proper seal of the said Surrogate Court, and that such signature and seal are entitled to full faith and credit.

"In testimony whereof, I hereunto set my hand and affix the seal of the consulate at the city of Hamilton this 2d day of January, 1906.

"[Signed] Richard Butler,
"[Seal.] Vice and Deputy United States Consul."

On the 16th of February, 1906, Bernard McCloskey and Thomas H. P. Carpenter describing themselves as testamentary executors of the estate of Mrs. Drysdale, presented a petition reciting that it was necessary that an inventory of the estate be taken in order that they might qualify agreeably to the laws of the state. They prayed that an inventory be taken before Cousin, notary; that after due proceedings it be approved and homologated, and that letters testamentary issue in their favor in accordance with law.

The court on this petition ordered (as it had before) that an inventory be made by Cousin, notary.

On the 20th of February, 1906, Miss Pike and John T. Pike presented a petition in which they prayed that McCloskey and Carpenter be cited and that there be judgment in their favor avoiding and annulling the aforesaid order of February 16th, ordering the execution of the will in accordance with law, and appointing them executors and decreeing the aforesaid purported will to be of no force and effect, and annulling same, and recognizing petitioners as the sole heirs at law of their deceased sister, and as such to be sent into possession of all her estate, real,

personal, and mixed, and for general relief.

This prayer was based upon allegations that the said Carpenter had presented said will at Hamilton, Ontario, and pretended to have the same probated to the civil district court certificates from the court of Hamilton, Ontario, and a certified copy of said will, and had secured an order from the civil district court on February 16, 1906, ordering said will recorded and executed according to law, and appointing Carpenter and McCloskey executors under said will; that at the time the said will was in New Orleans the succession of their sister, Mrs. Drysdale, had already been open, and an inventory ordered to be made to the knowledge of Carpenter, who was cognizant and aware of the proceeding, and had asked and requested from petitioners something out of her estate.

That petitioners were not parties to the alleged probate of the will in Ontario, Canada, and did not consent to the same; that on the contrary the action of the said court was null and void, because the aforesaid will was a forgery and not the will of their sister; that the said will was a fraud and a forgery; that it was never executed by Mrs Drysdale; that persons familiar with the signature of their sister who saw the will when it was in New Orleans declared that it was not the signature of Mrs. Drysdale; that the proceedings under it should be declared null and void and said will pronounced of no force and effect.

That their sister was domiciled and had her home in New Orleans at the time of her death where she had resided for many years, never having had her domicile or residence anywhere else; that all her estate real, personal and mixed was in New Orleans and within the jurisdiction of the civil district court with the exception of a tombstone in Ontario; that just prior to her death Mrs. Drysdale informed petitioner, Miss Pike, that all of her properties would go to peti-

tioners, they being her nearest relatives and heirs at law, and that she made no will, as the law gave them all her estate.

That she instructed petitioner Mary Ann Pike to go to Bernard McCloskey at her death as he had been for many years her attorney, and that he would attend to the matter for petitioner and that petitioners would secure her estate; that petitioners followed her instructions and did go to Bernard McCloskey, who on August 21st filed in the civil district court a petition praying for an inventory, which was made, and that nothing further was done in the said succession as shown by the docket until February 12th, when a will was presented with a copy of the alleged will and certified documents from Canada.

That Carpenter, who resides in Ontario, Canada, is the husband of the stepdaughter of Mrs. Drysdale, and shortly after her death he came to New Orleans, and inquired of various parties, among them petitioners and Bernard McCloskey, whether the deceased had left a will; that he stayed some time in New Orleans, and, failing to find any will in New Orleans or any trace of one, returned to Canada.

That all the parties of whom he inquired for a will informed him that they knew of none and had never heard of any. That while he was in New Orleans he approached petitioners and suggested and strongly urged that they settle up the succession of their sister, allowing him a portion thereof, thereby keeping the said lawyers from eating up the estate, but he was informed by petitioners that he was not related to or in any manner connected with Mrs. Drysdale, and was not entitled to participate in her estate or receive any part thereof, as same belonged entirely to petitioners as her heirs at law; that he returned to Ontario, Canada, and after some time returned to New Orleans, and while in New Orleans received a telegram that a will had been found in Ontario,

Canada, executed on the 14th day of September by Mrs. Drysdale witnessed by two employers of Carpenter, one being his foreman and the other his stenographer, the said will leaving the bulk of her estate to Carpenter.

That later on the said will was in New Orleans in the possession of Carpenter and was exhibited to petitioners and others but that it was never presented to the court in the parish of Orleans, although the deceased resided there and had lived here all her life; had a domicile here and nowhere else, and left all her property here with the exception of a tombstone in Canada; that thereafter Carpenter had presented to the civil district court the documents on which the court had acted as the basis for its order of February 16, 1906.

On March 2, 1906, Bernard McCloskey and Carpenter answered the petition of Miss Pike and her brother, pleading first the general issue.

Further answering, they averred that it was true that Mrs. Drysdale died on the 16th of August, 1905, and that she was domiciled in this city at the time of her death. Further answering, respondent Bernard McCloskey, one of the executors herein, says that it is true that he was employed by the plaintiffs in the present action to open the succession of Mrs. Julia Pike Drysdale, on the representation of her brother and sister that she had died intestate, and that he did through his firm of McCloskey & Benedict on August 21, 1905, open said succession and praying for an inventory therein; that respondent Bernard McCloskey represents that subsequently it developed that a will was executed by the deceased in Ontario, Canada, on the 14th of September, 1903, and was found in said Ontario, Canada, and thereunder your respondent Bernard McCloskey was nominated as one of the executors, that the terms of said will were in great part antagonistic to the interests of the petitioners

herein, Mary Ann Pike and John Thomas Pike, and that respondent Bernard McCloskey having been nominated as an executor under said will felt that it was his moral duty to accept said trust; and to that end he informed said Miss Mary Ann Pike and John Thomas Pike that other counsel should be employed; thereupon said petitioners employed Mr. W. S. Parkerson, an attorney at law of this city, and that your respondent Bernard McCloskey informed said W. S. Parkerson, of his position in the matter as will appear by copy of letter of date December 5, 1905, hereunto annexed. Respondents, further answering, say that they are informed that said will is in all respects legal and valid; that as appears by the proceedings herein filed, same has been probated and ordered executed by the Surrogate Court of the Province of Ontario, Canada, and said will and its probate have been made executory in the state by proceedings under date of February 16, 1906; that the allegations of fraud and forgery in the connection of said will are unfounded in fact and in law.

In view of the premises respondents prayed that the suit of said Mary Ann Pike and John Thomas Pike may be dismissed at their costs; that the said will may be decreed to be legal and valid and the probate thereof in full force and effect and that respondents, executors be authorized to carry into effect the provisions of said will and for general relief.

The inventory ordered by the court to be made by notary Cousin, having been made, McCloskey and Carpenter on the 23d of March, 1906, filed a petition in the district court, in which, reciting that they annexed a copy of the same, they prayed that it might be received and homologated. The court ordered that it be approved and homologated. We have not found that any oath was taken by McCloskey and Carpenter or that any letters were issued to them. Several petitions.

were filed by them as executors praying that they be authorized to do certain acts of administration therein referred to, and the authority so asked was granted by the court.

On April 24, 1907, the application of Miss Pike and John Thomas Pike to avoid and annul the court's order of February 16, 1906, was taken up for trial, evidence heard, and the case continued for argument. On October 17, 1907, Miss Pike and her brother filed a supplemental and amended petition in which they declared that they reiterated all the allegations of their original petition; that all the proceedings had, orders and judgments in the Surrogate's Court, county of Wentworth, province of Ontario, Canada, in reference to probate and execution of the alleged and purported last will and testament of Julia P. Drysdale, are null and void and should so be declared by this honorable court. That the said Surrogate Court was without jurisdiction to entertain the said purported will for probate, and was and is incompetent to render any order, judgment, or decree in reference to same, or in any way to pass upon the validity of same, and more especially in so far as the alleged will purported to dispose of property within the jurisdiction of this court, the court of deceased's domicile.

That the domicile of the deceased was in this parish and state, within the jurisdiction of this court, and that all of her estate was here situated; that she died here; that all her legal heirs resided here; that said purported will was brought within the jurisdiction of this honorable court, and should have been here offered for probate, where the succession had already been opened, and was then pending to the knowledge of all parties.

That this honorable court is the only court having jurisdiction over the said purported will; that the said Surrogate Court of Canada is a foreign court, and no order or decree of said court purported to probate the said purported will or appointing executors of

same, or in any way ordering its execution should be recognized or enforced by this honorable court, and that all orders or decrees heretofore rendered by this honorable court recognizing the aforesaid foreign probate of the aforesaid purported will, appointing executors, or confirming the aforesaid foreign appointment of executors, and otherwise ordering the execution of the aforesaid purported will, should be revoked, annulled, avoided, and vacated, and that all the proceedings had or orders and decrees or judgments rendered in the aforesaid foreign court should be declared by this honorable court to be null and void, as being the attempt of a foreign court to probate the will of a resident of Louisiana disposing of an estate situated in Louisiana.

In view of the premises petitioners pray that this supplemental and amended petition be filed, and that Bernard McClosky and T. H. P. Carpenter, purporting executors, defendants herein, be cited to answer this supplemental and amended petition, that after due proceedings had there be judgment in petitioners' favor granting all the prayers of their original petition, and further declaring null and void all proceedings had and orders and decrees rendered by the Surrogate Court, county of Wentworth, province of Ontario, Canada, in reference to the probate and execution of the purported last will and testament of Julia P. Drysdale, and vacating, revoking, annulling, and avoiding all orders and decrees heretofore rendered by this honorable court recognizing the aforesaid proceedings in the said foreign court, and ordering the execution of the aforesaid purported will. Petitioners pray for all general and equitable relief.

McCloskey and Carpenter representing themselves as testamentary executors appeared and for exception and answer represented that:

First. They excepted to said petition on the ground that same comes too late.

Second. That it changes the issues in the suit which has been already tried, argued, and submitted.

Third. That no application was made by petitioners contradictorily with respondents to reopen the case on any grounds.

In view of the premises they pray that these exceptions may be sustained and said supplemental and amended petition be dismissed and for general relief. And reserving the benefit of the foregoing exception and in no wise waiving same, but insisting thereon, respondents answer, reiterating the allegations of their original answer herein filed, and pleading otherwise a general denial.

In view of the premises they pray as originally prayed for and for general relief.

On October 16, 1907, the court rendered the following order: "This case having been under advisement upon due consideration is reinstated with leave to the heirs, petitioners, to amend their petition and prayer, so as to include the action and prayer for the annulment of the orders recognizing the foreign probate of the alleged last will and testament of the deceased and ordering its execution here, by the alleged testamentary executors. This order to be made with reservation of the rights of all parties in interest, to save litigation and costs in the interest of justice, when at issue under the amendment hereby authorized, the case will be fixed for hearing by preference."

On October 23d, the case was taken up for hearing; argument was heard; the matter was submitted and taken under advisement. On October 28th, the executors filed a petition in which they alleged that the will of the deceased, Mrs. Julia Pike Drysdale, in nuncupative form under private signature executed in the province of Ontario, Canada, on the 14th of September, 1903, was duly probated in the Surrogate Court, County

Wentworth, Canada, on January 2, 1906, and subsequently ordered filed, registered, and probated, and made executory by decree of this honorable court on February 16, 1906, that this honorable court has allowed an amendment to the issues herein propounded so as to determine whether or not said will should have been presented first to the civil district court for this parish, the domicile of the decedent. Petitioners further represent that they are unable to produce said will in this jurisdiction because said Surrogate Court of Canada refuses to allow its withdrawal, as appears from the letter of the probate judge of said court on file herein; that during the course of the trial of this case on the issues of forgery, all testimony necessary to prove said will has been presented contradictorily to this honorable court by all the parties in interest; and that as a matter of original probate this honorable court is in possession of the evidence which would have been introduced under a commission to prove the will, if same had been presented for original probate before this jurisdiction; that in the interests of justice and in the alternative, only reserving all legal rights under the pleas heretofore filed, petitioners represent that, should your honor decide that as a matter of original probate said will should be proven within this jurisdiction that your honor will so decree.

In view of the premises petitioners pray that, in the event only that this honorable court decided that as a matter of original probate the will herein propounded should have been filed within this jurisdiction, that on the evidence heretofore introduced this honorable court do adjudge and decree said will to be legally and validly proven agreeably to the laws of this state, and that it do enter such order accordingly and for general relief.

On November 12, 1907, the court rendered the following judgment:

"For reasons assigned in the written opinion this day filed the law and evidence being in favor of defendants. It is ordered, adjudged, and decreed that there be judgment in favor of Bernard McCloskey and Thomas H. P. Carpenter recognizing them as the testamentary executors of the last will and testament of the deceased, Mrs. Julia Pike Drysdale, duly probated and ordered executed by decree of this court of date February 16, 1906, and maintaining said will as genuine and dismissing the demands of the plaintiffs, Miss Mary Ann Pike and Thomas Pike, as set forth in their original and supplemental petitions herein at their costs.

"It is further ordered that the petition of the executors filed in the alternative and conditionally for the probate of the will be dismissed, there being no necessity for same."

The written reasons were as follows:

"Mrs. Julia P. Drysdale died in this city August 16, 1905, and her succession was opened in this court as an intestate succession. Her residence was here and her property real and personal here, except that she owned a tomb in Canada and had some personal interest there, so that there can be no doubt of the jurisdiction of this court over her succession.

"Mrs. Drysdale left no heirs in the ascending or descending line, but left collateral heirs on the petition of some of whom her succession was opened August 21, 1905, and an inventory was made. Some time after, what purported to be a last will and testament of said deceased was found in Canada, and was brought to this city. Mrs. Drysdale had relatives there, with whom her custom had been to visit and spend part of her time. It was a typewritten document, bearing her signature, and acknowledged before two witnesses which, as has been proved, is in form for a testament by the law of Canada.

"For some reason it was not offered for probate here, but was returned to Canada, and there, before the court of proper jurisdiction, was probated, and ordered executed January 2, 1906, and letters testamentary issued to the executors named therein, who, on February 12, 1906, produced and filed in this court in said succession record an authenticated copy of the probate proceedings of said Canada court and obtained an order, recognizing them as testamentary executors of said deceased, and directing the registry and execution of said will. Having qualified here said executors acted as such until February 20, 1906, when two of the heirs at law sued to have said will declared a forgery, and null and void, and by supplemental petition filed October 17, 1907, prayed for the nullity of the order and proceedings had in this court recognizing said will, and the executors.

"Issue was joined, and finally the executors prayed in the alternative for the probate of the will and letters, in the event that it should be held that the will was not forged but that the Canada court was without jurisdiction to pro-

bate it. The supplemental petition filed October 17, 1907, was suggested by me with the view to save cost and litigation, because, it was argued, that the action must be limited to the charge of forgery, and that the issue of the jurisdiction of the Canada court to probate the will could not fairly arise under the pleadings, and that amendment the executors with the same view, i. e., to save costs and litigation, filed the petition for probate, as stated, in the alternative.

"As judge of probates, beyond all question, having jurisdiction ratione materiæ (Code Prac. arts. 928, 929), I felt reluctant to entertain and finally determine the issue of the nullity of the will on the alleged ground of forgery, in the absence of the production of the original will, and on the production merely of a photographic copy of it. I was the more so, because the entire body of the will was typewritten, and the signature of the deceased thereto presented but a narrow field for investigation, and the charge being that said signature was forged. I so stated to counsel from the bench, after several witnesses had testified that they saw the original will in this city before it had been returned to Canada, and that they knew the signature of deceased, and believed that her name, signed to the will, was not written by her.

"My object was to secure the production of the original will, that I might judge the issue, from an inspection of it, along with all the evidence that might be brought on the subject and not merely from a photographic copy.

"I am satisfied that counsel for the executors and for the plaintiff have done all in their power to have the original will brought here, but, as seems strange to me, the Canadian court refuses to part with it, even temporarily. I have had my doubts if my duty to my state and to the litigants before me was not to refuse to pass on the serious charge of forgery of a will (which as judge of probate I must reject, or accept as genuine and execute) so long as the original of that will was held by a foreign court, and leave to the parties, claiming the benefit of its provisions, to find a way, through diplomatic correspondence between two general governments, or otherwise to secure its production here, and especially so, as one of the executors, the universal residuary legatee under the will, resides in Canada, and but for the will would have no interest in the estate of the deceased; and again, especially because, the will was brought to this city, and was in the hands of the executors named by it, after the court had acquired jurisdiction, by every jurisdictional test over said succession. It was easily within their power to have presented and filed it for probate in this court, where the succession was opened, the court having jurisdiction over the place where the deceased lived and died, where her real estate is situated, and where her personal estate was domiciled. The fact that its form was not in accordance with the directions of our law was no reason for not filing it here for probate, because if good in

form, by the law of the place where it was made, it would be held good here and there was no legal obstacle in the way of its probate and registry in this court, where the succession was pending, upon proof of the foreign law and the execution of the will by the deceased thereunder.

"But counsel for the executors took a different view of their duty and returned the will to Canada and had it probated in the proper court there, and then brought copies of the proceedings and will and lodged them, and obtained the necessary orders thereon.

"Reflection has convinced me that perhaps they pursued the correct course. The will was executed in Canada and left there by the deceased, and one of the named executors resided there. There was some property left there, a tomb lot proved by testimony in this case to be real estate, by the law of Canada, and there were rights and credits there.

"Over the property there, unquestionably the real estate and perhaps the stock in a corporation domiciled there, and held there by deceased, the Canada court had jurisdiction, and to this end its authority to probate the will found there, as left by deceased, unless it was proved a forgery, and to execute it quoad said property, must be conceded. As to the property in Canada this court though seised of jurisdiction over the succession here, could exercise no jurisdiction. This conclusion frees the case from all difficulty except that which may arise from the charge that the will is a forgery, because the plaintiffs' attacks upon the order of the court recognizing the will and accepting the probate in the Canada court, was on the ground that said court was without any jurisdiction whatever.

"My conclusion on the issue of the forgery charged is that the objections urged, that I have not had the original will, alleged to be forged before me, go more to the inconveniences and look more to the proprieties than to the substance of the situation. The executors have tried to produce the original will, and the foreign court that has possession of it refuses to permit its withdrawal from its records. The witnesses to the will, on whose testimony it was probated, were examined, and their testimony was taken on an examination by counsel for plaintiffs and the executors, and their evidence is positive that the deceased signed the original will in their presence, and that at her instance they signed it as witnesses. The fact that they had forgotten the circumstances and recalled it only when the will was found adds to their credibility. I have carefully read their testimony, and there is no reason why I should reject it.

"Witnesses here who knew the handwriting of the deceased express their belief that her signature to the will is not genuine. They saw and examined the original. One of them, who had been the business agent of the deceased, so testified, but he produced letters written and signed by her, which bear all the characteristics of her signature to the will. In the record are her canceled bank checks, an agreement. and letters, etc., that are conceded to be genuine. She did not always write her name the same way as comparison will readily convince any one.

"Outside of the positive testimony of the witnesses to the will, the plaintiffs by no means make their charge of forgery good, I cannot doubt the good faith of plaintiffs' witnesses, but I believe that their opinion that the signature to the will is not genuine arises more from their surprises at the dispositions of said will, and from their conviction, that it is wholly different from what they had reason to expect, than from any deliberate opinion or judgment as to the forgery vel non of said signature itself.

"Proof was brought of the dislike of the deceased towards one of the executors named as residuary legatee, and the improbability of her favoring him in her will was argued. The eccentricities of our frail humanity are displayed more signally nowhere than in the dispositions, made specially by old persons mortis causa. The fact that this executor and legatee was in ignorance of the existence of a will, when he came here to see the heirs, relative to a settlement, and that the will was found in the safe of a law firm during his absence from Canada and while here, carry no sinister conclusion against him, in the presence of all the facts that have been proven.

"A most careful study of the entire record had led me to the conclusion that the last will and testament of the deceased is genuine, that the Canadian court had jurisdiction to probate it, and that the orders granted by this court, recognizing said probated will and ordering its execution were regular and in accordance with our law.

"See Rev. Civ. Code, arts. 1595, 1596, 1688, 1689; Succession of McCandless, 3 La. Ann. 579; Hebert, Tutor, v. Winn, 24 La. Ann. 385; Succession of Hall, 28 La. Ann. 57; Succession of Robert, 2 Rob. 427; Jones v. Hunter, 6 Rob. 235, 239.

"I heard with much interest the very able argument of plaintiffs' junior counsel, based on the theory of the exclusive jurisdiction of this court to receive and probate the will, and I have examined the California case of Clark v. Dubois, 148 Cal. 108, 82 Pac. 760, 1 L. R. A. (N. S.) 996, 113 Am. St. Rep. 197, as well as the editor's case note appended and most of the cases there collated. I noticed that one of the cases (Morris v. Morris, 27 Miss. 847) stressed the fact that the provisions of the Louisiana Code make an express exception in this state, to the general common-law rule obtaining in Mississippi and other states. I think that the whole basis on which rests plaintiffs' argument derived from all these cases falls, in presence of the fact, that the Canadian court, in the instant case, had jurisdiction over the property of the deceased situated there, and that this gave it the authority to receive and probate the will of deceased, and to execute it, quoad that

portion of her estate. If for any purpose that court had jurisdiction to probate said will its decree of probate is good, and must be respected here. In any event I must follow the law and jurisprudence of our own state.

"A decree in favor of the defendant executors will be entered."

The legal heirs have appealed.

The appellees have filed an answer to the appeal in which they aver that the petition filed by the appellants on February 20, 1906, propounded the single issue of forgery vel non that no other issue was presented on the trial of the case; that after trial, argument, and submission, the lower court reinstated the case, and gave permission to the opponents to attack the validity of the probate of the will for want of jurisdiction in the Canadian court: that on October 28, 1907, more than a year after the issue of forgery had been made, the opponents presented a supplemental petition attacking the probate of the will, on the ground of jurisdiction in the Canadian court; that appellees duly excepted to said supplemental petition on the following grounds:

(1) That same came too late.

(2) That it changed the issue in a suit which had already been tried and argued and submitted, and

(3) That no application was made by appellants (opponents) contradictorily with appellees to reopen the case on any ground, and contingently appellees answered said supplemental petition, by a general denial.

That said exceptions were overruled and the case tried, argued and submitted on the merits of the issue propounded by the supplemental petition.

That the court erred in allowing the filing of said supplemental petition and overruling the exceptions.

They prayed that the issue in this case be restricted to the consideration of the issue of forgery propounded by the original petition alone, and that the judgment of the lower

court be affirmed or in the alternative, should this court deem proper to pass upon the new issue alleged to have been improvidently allowed, that the judgment of the lower court be likewise affirmed.

### Opinion.

This case reaches us on an appeal, not from the original order rendered by the district judge on the 12th of February, 1906, which reads, "that the last will and testament of the deceased duly probated in the province of Ontario, Canada, on the 14th of September, 1903, a certified copy of which is herewith filed, be approved, registered and executed, according to law, and that Bernard McCloskey and Thomas H. P. Carpenter be confirmed as executors, and that letters as such issue on their taking the oath as prescribed by law," but on an appeal from the judgment of the court refusing to annul and set aside that order on the application made to it by the legal heirs of the deceased, on the grounds stated by them.

Appellants in their brief call our attention to the fact that, on the trial of the case, they objected to the introduction in evidence of the "so-called copy of the proceedings had in the province of Ontario, on the ground that the certificate of the clerk is not a certified copy of the entire proceedings or of any part thereof, as required under the jurisprudence of Louisiana, because the said court in Canada had no jurisdiction to admit the said will to probate. They refer the court on that point to Balfour v. Chew, 5 Mart. N. S. 517; Johnson v. Rannels, 6 Mart. N. S. 621; Succession of Bowles, 3 Rob. 33.

They further objected to the offer of the Civil Code and Revised Statutes of Canada on the ground that they had no application to the cause then pending before the court and to the so-called copy of the will and affidavit thereto annexed on the ground that proper proof of the identity of the will sup-

posed to have been probated in Canada is not shown. The instrument, which was recognized by the district judge as the last will and testament of Mrs. Julia Drysdale, and ordered by him to be registered and executed, purports to have been executed by her when temporarily in Canada.

Mrs. Drysdale at that time and at the time of her death, had her domicile in Louisiana. She died in this state. On her death her succession was at once opened by effect of law in this state. Her legal heirs were citizens of Louisiana at that time, and they also had their residence here. Their rights as legal heirs were transmitted to them by effect of law from the moment of the death of their deceased relative. The legal heirs opened her succession ·in the civil district court for the parish of Orleans. After that court has assumed jurisdiction over the succession, the original of the alleged will of the deceased was brought to the city of New Orleans doubtless for the purpose of being offered for probate, but its form was such that under application of the general rules of law relative to the probating of wills, the instrument would not have been admitted to probate as it was a typewritten instrument signed by Mrs. Drysdale and two subscribing witnesses. It purported to be a nuncupative will by private act. The conclusion evidently reached by the parties having possession of the writing that it could not be probated in Louisiana which was her domicile, under the special facts of the particular case, was an erroneous one. Having been executed in Canada, it could have been probated in Louisiana on proof being made that its form as a will was in accordance with the laws of Canada, where it was executed. Proof of that fact could have been established through proper testimony taken on the application for probate, just as proof of foreign laws can be established when that fact is necessary in order to test the rights of parties in respect to contracts.

There was no necessity for that purpose to have sent the original will then in Louisiana out of the state of Louisiana in order to have it primarily probated by a court in Canada and in order that the probate of the same by a Canada court should be utilized later and made the instrumentality for recognizing the will in Louisiana. The courts in Canada had no interest whatever in the will unless the deceased had left property there, and the probating of the will had become necessary for the purpose of opening an ancillary succession there, having exclusively in view the administration of that particular property. To that extent and no further was the Canadian court concerned. The Canada court could not by its decree extend its power beyond the territorial limit of Canada so as to cover the administration of the main or home succession in Louisiana. Executors of a will probated by a competent court at the domicile of the deceased, occupy a very different position as to their rights and powers from those confirmed by a court having control of merely an ancillary succession. An ancillary succession cannot control the main succession. The executors appointed in this case by the Canada court could not enter Louisiana with rights and powers drawn ex proprio vigore from the decree of a foreign court; and oust ex parte the legal heirs from the legal status which they held as such. They were at the very least entitled to be heard before their rights could be so disposed of. The order of the district judge, which appellants complain of, ignored them completely, and forced them to occupy summarily the position of plaintiffs instead of defendants as they were entitled to with respect to their legal rights. It imposed upon them burdens as to evidence which should not have been placed upon them, and made

them enter into the litigation thrown upon them under very disadvantageous conditions.

Appellees rely upon articles 1595, 1596, 1688, and 1689 of the Revised Civil Code, which read as follows:

"The formalities to which testaments are subject by the provisions of the present section, must be observed otherwise the testaments are null and void." Article 1595.

"But testaments made in foreign countries or the states and other territories of the Union shall take effect in this state if they be clothed with all the formalities prescribed for the validity of wills in the place where they have been respectively made." Article 1596.

"Testaments made in foreign countries and other states of the Union cannot be carried into effect on property in this state without being registered in the court within the jurisdiction of which the property is situated and the execution thereof ordered by the judge." Article 1688.

This order of execution shall be granted without any other form than that of registering the testament if it be established that the testament has been duly proved before a competent judge of the place where it was received.

In the contrary case the testament cannot be carried into effect without its being first proved before the judge where the execution is demanded. Article 1689.

The people of a state are entitled to protection from its laws. Interpretations of statutes which have a contrary result should not be given where it is possible to avoid them. We are of the opinion that the articles of the Code referred to were not intended to apply to the probating of wills of persons who were domiciliated in and died in the state of Louisiana which happen to have been made in another state, particularly where these successions have already been opened there, by the legal heirs also domiciled there.

In the matter of the estate of Clark the Supreme Court of California referring to the same position which the executors in the present case have taken used the following language:

"If the position contended for is sound, it involves upon the part of the state a formal surrender of so much of its sovereignty and right of primary jurisdiction, conferring that upon foreign states, and at the same time, to this extent, is subversive and destructive of the rights of its citizens. It would be said with exact truth that the full faith and credit which is accorded to the adjudications of sister states is a full faith and credit, consonant with complete jurisdiction and control of the sovereign state over all its inhabitants, and over all the property within its boundaries. No less would the practical hardships of such an interpretation be pointed out because, if it were so that all wills, therein including domestic wills of residents of this state, could be primarily proved in a foreign jurisdiction, and by mere exemplification of that proof be entitled to ancillary probate under the laws of this state, it would result in numerous instances that wills of residents of this state would be probated in foreign jurisdictions without the knowledge of those in interest resident in this state, and without an opportunity to them afforded of raising any question of fraud, insanity, undue influence, or the like, affecting the validity of the instrument. Further, it would be pointed out with justice that, if the construction contended for be the true one, it is arrived at by obliterating all distinction between the probate of domestic and foreign wills, by refusing recognition to the language of the Code classifying these foreign wills, and by a surrender of the state's original jurisdiction in these matters, with the result that it places the state of California in an anomalous class by itself. For neither the laws of Great Britain nor of any sister state of the United States ever have permitted, and we venture to say never will permit, any such doctrine, and it may be safely added that no civilized country in the world has ever entertained it."

There can be no doubt that under the provisions of article 1595, Rev. Civ. Code, cited by the appellees, the instrument which the district court recognized as the last will and testament of Mrs. Drysdale was null and of no effect, if tested by the laws of Louisiana, relative to the confection of wills. It could be judicially conceded that the signature to the same was her genuine signature and that the provisions of the instrument are avowedly those which she desired to have carried out without breaking the force of the law's order that it should be null and of no effect. Weil v. Jacobs' Est., 111 La. 367, 35 South. 599.

The question submitted to us by appellants

is whether it has acquired vitality and executory force by the simple fact that it has been held by a Canadian court acting for the sole purpose of the local administration of an ancillary succession, to be the valid and legal will of the deceased in a proceeding to which her legal heirs, domiciled in Louisiana as she herself was, were not made parties. On that point they refer the court to Scripps v. Wayne, 131 Mich. 265, 90 N. W. 1061, 100 Am. St. Rep. 614; Bailey v. Osborne, 33 Miss. 128; Stewart v. Pettus, 10 Mo. 755; In re Shearer's Estate, 1 N. Y. Civ. Proc. Rep. 455; Townsend v. Moore, 53 N. C. 147; Picquet v. Swan, Fed. Cas. No. 11,133; Tarbell v. Walton, 71 Vt. 406, 45 Atl. 748, and particularly to Stark v. Parker, 56 N. H. 481; Wallace v. Wallace, 3 N. J. Eq. 616; Sturdivant v. Neill, 27 Miss. 157; Estate of Clark, 148 Cal. 108, 82 Pac. 760, 1 L. R. A. (N. S.) 996, 113 Am. St. Rep. 197.

We are of the opinion, independently of other considerations, that under the conditions of this particular succession the district judge should before acting upon the petition presented to him, by McCloskey and Carpenter, have required them to make the legal heirs of Mrs. Drysdale parties to the proceeding and given them an opportunity of making such objections and exceptions thereto as they were entitled to in the premises. The question remains, however, whether or not the situation presently is such as to call for a setting aside of the judge's action, forcing the appellees to start de novo, or whether matters are in such a position that we could or should act on the evidence introduced in the district court, and determine whether on that evidence the alleged will should be probated as a matter of original probate.

The original will was not produced, it having been filed in the Surrogate Court in Canada, and the Canadian authorities refusing to allow it to be brought to Louisiana. This condition of things was due to the action of Carpenter in seeking to have and having the will probated in Canada. On the trial of the case the executors offered in evidence a certificate from the register of the Surrogate's Court in Ontario, Canada, to the effect that "the last will and testament of Mrs. Laura Pike Drysdale, late of the city of New Orleans, state of Louisiana, had been on the 2d day of January, 1906, proved and registered in the said court, and that the administration of all and singular the property of said deceased, and in any way connected with her will, had been granted to Carpenter and McCloskey, they having been first sworn to faithfully administer the same." The proceedings taken at the time of the probating which is therein declared to have been made and the evidence introduced at that time have not been brought up. We have derived no information as to what they were from the certificate of the registrar.

We ascertain from the testimony given on the present trial by E. A. Jones and McGill, whose names appeared on the copy of the instrument submitted to the district judge as witnesses to the same, that they were not examined as witnesses before the Surrogate Court, but had signed an affidavit in Mr. Carpenter's office relative to the confection of the instrument. What was recited in that affidavit we do not know. Whether they had the original instrument before them when making the affidavit is not disclosed. In their testimony given on this trial, those parties each testified that he had been requested by Mrs. Drysdale personally to sign an instrument which she declared was her will and that he had done so; that the three (that is Mrs. Drysdale, Jones, and McGill) had all signed the same, and in each other's presence.

On the trial of the case, the executors offered in evidence a printed copy of the Statutes of Canada, touching the requirements

demanded in the matter of the confection of wills as to form. They offered in evidence what purported to be a photographic copy of the original instrument which a photographer who had made it, verified by affidavit as having been brought to him by the clerk of the Surrogate Court of the county of Wentworth.

Miss Mary Ann Pike and her brother John Thomas Pike, the legal heirs of Mrs. Drysdale, testified positively that the signature attached to the photographic copy of the will introduced in evidence was not the signature of Mrs. Drysdale, as did also Louis C. Frantz, who testified that he had attended to all her affairs after the death of her husband.

Under these conditions the district court refused to set aside the order he had made recognizing the will, and directing its registry and execution, but on the contrary maintained the same, declaring that the signature of Mrs. Drysdale to the photographic copy of the will was her genuine signature, and the instrument was not a forgery. He was evidently satisfied that the instrument conformed in its form to the requirements of the laws of Canada as to the confection of wills.

It is evident also that he believed he had before him full evidence of the regular probating of the will by the Surrogate Court in Canada. We do not think he had such evidence. The certificate of the registrar was properly authenticated, but when produced was insufficient to show a probate of the will.

We do not think that the photographic copy of what purported to be the original instrument was properly before the court. The photographer who made it was not examined as a witness in regard to it, nor was the clerk of the Surrogate Court. It was placed before the court upon a simple affidavit of the photographer that it had been brought to him by the clerk of the Surrogate Court, declaring what it was.

After much consideration we have reached the conclusion that in order to do full justice to all parties, we should annul, avoid, and reverse the judgment appealed from herein, and annul and set aside the order of the district judge on the 13th of February, 1906, which appellants herein seek to have annulled and set aside, without prejudice to the right of the appellees to apply hereafter for the original probating of the alleged last will and testament of Mrs. Julia P. Drysdale, and that appellees pay the costs in both courts, and it is accordingly hereby so ordered, adjudged, and decreed.

## On Application for Rehearing.

PER CURIAM. There can be no question that the will of Mrs. Drysdale could have been originally probated in the state of Louisiana. Succession of Hall, 28 La. Ann. 57. The succession was opened in this state by the heirs at law. The alleged will was brought here by Carpenter, one of the executors, and was exhibited to the heirs and other persons. The heirs contended that the signature of Mrs. Drysdale to the instrument was not genuine. Carpenter made no effort to probate the will in Louisiana, but carried it back to Canada, where the deceased owned no property except an interest in a tomb. It is claimed by the executors that the will was probated in the Surrogate's Court of the county of Wentworth in January, 1906. The only evidence of the alleged probate is a certificate from the registrar of the court, stating that the will had been proved and registered, and that the administration had been granted by the court to the executors named in the will after they had been duly sworn, etc. This certificate is not a copy of the record of the proceedings had, but a mere statement by the registrar of what had been done. A copy of the entire record should have been produced.

The executors contend that the evidence in the record is sufficient to authorize the original probate of the will in the court below.

It is true that two witnesses testified under commission that they had attested the will, and had made affidavits to that effect before the will was probated in Canada. On the other hand, the two heirs at law and the former agent of the deceased testified that they had seen and examined the instrument in the city of New Orleans, and that the signature of Mrs. Drysdale was a forgery. As stated in our opinion, the photographic copy of the will and signature produced below is not sufficiently authenticated and proved to serve as a substitute for the original.

Our decree leaves the executors at full liberty to probate the alleged will in the civil district court for the parish of Orleans. We cannot indicate to the parties in advance what course should be pursued relative to the probate of the will.

The complaint as to costs is not well founded. The appellants succeeded in obtaining a decree setting aside the probate of the will in the court below, and the executors should pay the costs. Whether the estate will be eventually liable to them for costs expended in its behalf. is a different question.

Rehearing refused.