(112 So. 375)

No. 27156.

**WILCOX et al. v. CITY OF HAMMOND et al.**

March 28, 1927.

*(Syllabus by Editorial Staff.)*

1. **Wills** &#9758;47—**Aged testatrix, who was not physically strong, and would talk on one subject for a while and then another, held not mentally incompetent.**

Testatrix *held* not mentally incompetent, though she was aged, not physically strong, would talk on one subject for a while and then another, and required her housekeeper to wait on her, shop for her, and keep her household accounts.

2. **Wills** &#9758;50—**That testatrix made no provision for cousin for whom she showed some interest and affection held not to show incompetency.**

Aged testatrix *held* not mentally incompetent because she made no provision in her will for one of her cousins for whom she had shown some interest and affection.

3. **Wills** &#9758;52(1)—**Presumption favors will, not insanity.**

Presumption is always in favor of the will; insanity never being presumed.

4. **Wills** &#9758;55(7)—**Advanced age of testator, forgetfulness of family, largeness of legacy, and low rank of legatee, of themselves, do not show "mental incompetency."**

"Mental incompetency" of testator is not shown by facts in themselves of his advanced age, forgetfulness of family, largeness of the legacy, and the low rank of the legatee.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Mental Competency.]

5. **Wills** &#9758;55(7)—**Sensible will, entirely written, dated, and signed by testatrix, held best answer to allegations of incompetency.**

Fact that purported will was a sensible will, entirely written, dated, and signed by the testatrix, *held* to be the best answer to plaintiff's allegations that testatrix lacked testamentary capacity.

Appeal from Twenty-First Judicial District Court, Parish of Tangipahoa; Carroll Buck, Judge ad hoc.

Suit by Arthur L. Wilcox and others against the City of Hammond and others to annul the will of Mrs. Carrie N. Miller. From an adverse judgment, plaintiffs appeal. Affirmed.

Shelby S. Reid, of Amite, and Gardner & Gardner, of Rochelle, Ill., for appellants.

A. W. Spiller, of Hammond, for appellee City of Hammond.

Frank Wm. Hart, of New Orleans, for appellee King's Daughters and Sons of Louisiana.

Clifford E. Hays, of Minden, for appellee Richardson.

ROGERS, J. On March 20, 1923, Mrs. Carrie N. Miller, aged about 81 years, died in the city of Hammond, this state, where she had been living for a period of approximately 25 years. Her will, dated June 4, 1916, and made in olographic form, was duly probated, and several months thereafter the present suit was instituted to annul the testament on the ground that the testatrix was insane or mentally incapable at the time she made it. The plaintiffs, two of whom are residents of the state of Illinois and the other a resident

of the state of Iowa, are the cousins germane, and the nearest relatives and sole heirs of the decedent, who never had any children, and whose husband died some time prior to the date of her will.

[1] The will reads as follows:

"Hammond, June 4, 1916,

"I make this my last will revoking all others previously made. I devise to the town of Hammond, La., the south half of my property in Sq. 67 in Hammond for the specific purpose of building a public Library thereon, to be known as 'The Miller Memorial.' In addition I will to the said town ten thousand dollars to erect and furnish the said Library. My books I will to the said town for said Library.

"The north half of my property in Sq. 67 in Hammond and building and furniture I devise and will to the King's Daughters and Sons of Louisiana for the specific purpose of being used as a Home for deserving women.

"I will to Martha Prevost the sum of five hundred dollars provided she remains with me and cares for me as she has heretofore done until my death.

"All the rest of my property I will to King's Daughters and Sons of La. as an endowment fund for the said woman's home.

"I appoint Ed Richardson my testamentary executor with seizin and without bond and I constitute Clifford E. Hays attorney for my executor and succession.

"Thus wholly written dated and signed at Hammond La. this 4th. June 1916."

"[Signed.]        Carrie N. Miller,
              "Carrie N. Miller."

An examination of the record fails to disclose that any evidence was adduced by the contestants to show that the testatrix was guilty of acts of folly or that she suffered from delusions. As indications of her insanity and mental incapacity, the most their witnesses were able to say was that she was not physically strong; that when engaged in conversation she would talk on one subject for a while and then she would change it; that she would talk very well for a short time and then get tired out and would lie down and rest a while; that in the fall of 1915 she employed a housekeeper, who, with the exception of several months from December, 1915, to the spring of 1916, re-mained with her until the spring of 1917; that she required this housekeeper to wait on her, shop for her, and keep her household accounts. The housekeeper was the legatee Martha Prevost, whose legacy lapsed because she failed to comply with the provision of the will to remain with and care for the testatrix until her death.

This testimony is, in itself, utterly insufficient to overcome the legal presumption that the testatrix was sane when she made her will. But beyond this, the evidence submitted by the defendants affirmatively shows that she was not insane or mentally incapable at that time.

The testatrix personally employed the housekeeper Martha Prevost, opening up negotiations with her by letter. During the time this employee was with her, the testatrix rented rooms on the upper floor of her residence, collecting the rents from the tenants, using part of the money so collected for household necessities, and depositing the remainder in the bank. She also, from time to time, visited and made purchases from stores in the business center of the city. She lived for a period of about 7 years after making her will. Miss Eastman, a friend of the decedent for about 35 years, testified that, at the request of the decedent in 1917, she assumed active charge of her business, but always under her supervision, until about the year 1921, when the decedent, seeming to tire easily, turned all of her affairs over to the witness to do the best she could. During the year 1916, the witness frequently read to the decedent, who understood and discussed what was read. Prior to making her will, the testatrix spoke to the witness in regard thereto, soliciting her opinion as to the advisability of leaving her property to the King's Daughters or to the Order of the Eastern Star, desiring to know which would do the most good: witness replying that was a matter she would have to decide for herself. Witness did not

know the will had been made until several months afterwards, and was not acquainted with its contents until about a year afterwards, when she went to the bank and read it at the request of the testatrix.

Dr. Gates, the family physician of testatrix, lived only two doors away, and saw her frequently. He testified that up to the year 1919 he did not detect anything in her that he would consider mental "disbalance." That her mentality began to fail in 1919, although he did not detect any mental deficiency until and during her last illness, which was more a childish condition than an insane condition, due to bodily decay and arterial sclerosis.

Dr. McGehee, who, as the superintendent of a sanitarium, had made a study of mental diseases for five years, was called in the year 1919, in the absence of Dr. Gates due to illness, to treat the testatrix for erysipelas on the left side of her face. He testified that, during the time he was attending her, he observed her mental condition, and she was mentally normal. He also had occasion to see her socially quite often, and she did not appear to be in any way mentally deficient.

Mrs. Joiner, Miss Simmons, and Mr. Penniman, friends of the testatrix, testified concerning certain incidents and facts occurring in her daily life, all of which tended to show that her mental condition was sound.

The will itself was made in presence of Mr. Clifford Hays, a reputable and highly respected member of this bar. Mr. Hays had been the personal attorney of the husband of the testatrix. Upon his death in 1914, the testatrix sent for him to settle up the estate. Shortly after the succession had been closed, she informed him that she desired to make a will and to dispose of her property in the manner in which she finally did. Mr. Hays stated that testatrix spoke to him several times in regard to the matter, but that he thought he would give her time to think it over, and that it was not until she had become insistent and sent for him on June 4, 1916, to make her will, that he acceded to her wishes. He then gives in detail the manner in which the will was actually made. The will was written, dated, and signed by the testatrix in her own handwriting. Mr. Hays testified that he made no attempt to influence the testatrix, and that everything in the instrument was her own thought and desire; that he merely assisted her in wording the testament so as to put it into legal shape. He stated that, after the will was signed, there was some discussion between them about the signature, and she signed it again to be sure, thus explaining the two signatures attached to the instrument. The witness also testified to conversations had with the testatrix concerning her business affairs, showing that she was not mentally deficient.

[2-4] It is argued on behalf of the contestants that her failure to provide for one of them, Arthur L. Wilcox, in whom she had shown some interest and affection, was a circumstance tending to show that the testatrix did not realize what she was doing and was not of sound and disposing mind and memory when she made her will. The argument is without force.

" 'The presumption' says Toullier 'is always in favor of the act. Insanity is never presumed. The advanced age of the donor, the forgetfulness of his family, the largeness of the legacy, the low rank of the legatee, will not of themselves suffice to decide that the testator is not of sound mind.' Droit Civil, vol. 3, p. 44. See, also, Marcade, vol. 3, p. 403; Duranton, vol. 8, p. 167"—cited and approved in Chandler v. Barrett, 21 La. Ann. at page 60 (99 Am. Dec. 701).

The evidence establishes, incontrovertibly, that the decedent was actively interested in the work of the King's Daughters. She attended the convention held by that organization in the city of New Orleans in April, 1916, not quite two months prior to the date of her

will. Her bequest to the city of Hammond is explained by her laudable desire, as shown by the record, to leave her money for the building of a public library which would benefit the people of that city and at the same time serve as a memorial to her predeceased husband.

[5] Finally, the instrument itself is a sensible will, entirely written. dated, and signed by the testatrix, and is the best answer to the allegations of the absence of testamentary capacity. Rice v. Key, 138 La. 483, 70 So. 483.

For the reasons assigned, the judgment appealed from is affirmed at appellants' cost.