ODOM, Justice.
 

 Agnes E. Lewis, a daughter of John B. Lewis, deceased, presented to Hon. James D. Simon, judge of the district court of Iberia parish, an instrument purporting to be the last will and testanient of the said John B. Lewis, made in olographic form, in order that the same might be proved and admitted to probate. She alleged that the purported will could not be proved by witnesses residing in the parish of Iberia, where the deceased died and left his estate, and that the only witnesses by whom proof could be made reside in the city of New Orleans. She further alleged that the witnesses by whom the proof could be made refused to go to the parish of Iberia to testify and that it was necessary that a commission issue to take the testimony of said witnesses. The court refused to issue the order to take the testimony by commission, and Miss Lewis applied to this court for writs, which were granted. In response to our order to show cause, the district judge has set out his reasons for refusing to grant the order. As we approve the ruling made by the court and his reasons therefor, we copy in full the return made by him.
 

 “The only question here presented involves the procedure to be observed in probating an olographic testament.
 

 “The petition presented to me for probating the purported last will and testament of John B. Lewis, deceased, sought the issuance of a commission directed to a competent notary public of Orleans parish, to take the testimony of two named persons residing in the parish of Orleans. In connection therewith the applicant further sought an order from me, directing that the original document purporting to be the last will and testament of the deceased be attached to and made a part of the commission to be presented to the witnesses by the notary public in connection with the interrogatories, which interrogatories were to be prepared by me to ascertain the authenticity of the testament.
 

 “The relief sought by the applicant was denied, based upon my interpretation of our codal provisions, and thereupon writs from this honorable court were then issued.
 

 “I have made a cursory examination of our jurisprudence and find that the question here involved has never been presented to this honorable court. I may logically conclude, therefore, that our codal provisions dealing with the procedure to be observed in probating testaments are so clear and specific in their language that the occasion for the relief here sought never arose.
 

 “Art. 935 of our Oode of Practice provides :
 

 “ ‘The party praying for the opening and proof of the will, shall cause to be summoned the number of witnesses possessing the qual
 
 *215
 
 ities required for such proof, and if the presumptive heirs of the deceased or any of them reside in the place, he shall give them notice in writing, that they may attend, if they think proper, at the opening and proof of the will.’
 

 “Article 938, Code of Practice, provides:
 

 “ ‘At the time appointed for the opening and proving the will the judge shall proceed in this duty in the manner prescribed by law.’
 

 “Article 1655, R. C. C., provides:.
 

 “ ‘The olographic testament shall be opened, if it be sealed and it must be acknowledged and proved by the declaration of two credible persons, who must attest that they recognize the testament as being entirely written, dated and signed in the testator’s handwriting.
 

 “ ‘The judge shall interrogate the witnesses under oath touching their knowledge of the testator’s handwriting and signature and shall satisfy himself that they are familiar therewith making mention of the whole in his proces verbal thereof.’
 

 “Article 939, Code of Practice, provides:
 

 “ ‘For the purpose of such proof, the judge shall receive the deposition, in writing of each of the witnesses produced, which depositions shall be signed by them with their names or ordinary marks, and the whole shall remain annexed to the record.’
 

 “Article 940, Code of Practice, provides:
 

 , “ ‘After this proof the judge shall read the will in an audible and distinct voice, to the end that its provisions may be heard by the witnesses and all other persons present, and if it appear to be in regular form the execution of it shall be ordered, and it shall be recorded.’
 

 “These wholesome rules of procedure to be observed by trial judges have, from our earliest jurisprudence, been held to be sacramental, save and except where the genuineness of the handwriting is at issue, and in that instance, our courts permit secondary evidence, such as the comparison of writings. But, other than that, the procedure as prescribed is mandatory on the judge, and his only discretion rests in the quality of the proof required to satisfy himself as to the validity of the will.
 

 “That is so for the time-honored reason that testaments are in themselves sacred, and, in the proof and execution thereof by the order of court, the procedure as defined by our Codes, has been adopted and accepted in observance of this sacredness.
 

 “Article 935, C. P., provides that the party praying for the opening and proof of the will shall cause the qualified witnesses to be summoned for the purpose of presenting the proof required.
 

 “The applicant in this instance does not seek the summoning of witnesses before the judge, but on the contrary demands that, in avoidance of this plain command, the witnesses appear before a notary public at then-own will in Orleans parish.
 

 “The words ‘summoning of witnesses’ to make proof can mean just what the words signify in their ordinary adaptation.
 

 “The remaining provisions of this article require that notice in writing shall be given to the presumptive heirs of the deceased,
 
 *217
 
 that they may attend, if they think proper, at the opening and proof of the will. It has been held, however, that only the heirs who reside in the parish where the probate proceeding is instituted are covered by this provision, and further that the failure of •notice will not in itself warrant the annulment of the judgment. Broussard v. Hebert, 149 La. 309, 89 So. 14.
 

 “But the language of these provisions as to notice in itself clearly contemplates the proof of the will by'witnesses summoned into court, and whose testimony is given in court before the examinating judge, in the presence of all persons of interest, should they desire to be present, and likewise to afford to all .persons of interest as presumptive heirs the opportunity of observing the procedure to the end that the validity of the will may be legally proved and justice rendered between all persons concerned.
 

 “To transfer the examination of witnesses to a foreign parish would undoubtedly in effect be denying the presumptive heirs who reside in the parish wherein the testator was domiciled their legal right to be present at the submission of proof of the testament.
 

 “Under article 1655, R. O. C., the proof required is the declaration by the qualified witnesses, who shall attest that they recognize the testament as being entirely written, dated, and signed in the testator’s handwriting.
 

 “These provisions, as I understand them, mean the oath of witnesses and their respective declarations in the presence of two other disinterested witnesses viewing the entire proceedings and who likewise sign the procés verbal.
 

 “Article 1655, R. C. 0., further requires the judge to interrogate the witnesses under oath as to the proof required. By this language, I must conclude, is meant that the witnesses be present before him for such interrogation, and this for the reason, as our Code states, of satisfying himself that these witnesses are fully qualified and that the quality and measure of their testimony, under interrogation, meets the requirements of law.
 

 “I may assume instances where the usual interrogation may be broadened due to unforeseen development of the evidence as given. Stereotyped questions cannot and should not always meet the requirements, and the answers given thereto often may lead to a more thorough examination. Generally speaking, to allow interrogation of witnesses, unknown to the judge .and outside of his presence, either as to their credibility or their qualifications, through interrogatories propounded, would .not only be flying in the teeth of our codal provisions, as I interpret them, but would likewise defeat the means afforded him by law of satisfying himself as to the quality and measure of the proof.
 

 “This codal article,, supra, can mean but one thing, the production of the will before the court, the opening thereof in the presence of the witnesses summoned and presented, their interrogation by the judge in person, so that he may satisfy himself of the requirements of law, this in the presence of the presumptive heirs and parties of interest, if they so desire to be present, the reading of the will, after required proof, in the presence of these attesting witnesses and two other disinterested witnesses, and the signing of the procés verbal by these parties and the
 
 *219
 
 judge, which latter act as required by article 940, O. P.
 

 “The procedure sought by the applicant would compel the reading of the will by the judge outside of the presence of the attesting witnesses, a course clearly in violation of the language of article 940, O. P., and likewise having the proees verbal filed without their respective signatures thereto.
 

 “Furthermore, applicant seeks thé filing of the will, and the forwarding thereof, in its original form, to the notary public by mail or otherwise, which in my opinion is not contemplated by law, and a dangerous practice with grave possibilities.
 

 “Article 939, C. P., submitted to me by counsel for applicant in support of the relief sought, does not, in my mind, mean that the witnesses may give their depositions in writing outside of the presence of the judge. The following article (940, O. P.) dispels such an interpretation. The depositions mentioned simply mean that the declarations of the attesting witnesses shall be reduced to writing and inserted in and made part of the procés verbal, and such declarations being made by the judge in court or chambers under interrogation as mentioned above.
 

 “The articles of our Code (R. O. O.) dealing with depositions of witnesses in civil suits, and the method of procedure as outlined between plaintiff and defendant cannot apply where heirs seek the proof and execution of testaments.
 

 “I may add that John R. Lewis was a life-long resident of Iberia parish, well-known socially and in a business way to almost every resident of that parish wherein he owned extensive farm holdings and transacted the major part of his business affairs, save in the last few years of his life when financial conditions compelled him to seek assistance from others.
 

 “Four separate applications were made, at successive dates, by one set of the heirs, representing the majority. In each instance, the witnesses were presented after summons regularly issued, or at the personal request of the applicants. In each application a new set of witnesses were presented for interrogation. In all eight witnesses, under four applications, at successive dates, were thoroughly examined by me. On each occasion the witnesses refused to testify under oath that the documents presented to them purporting to be the last will and testament of the testator was dated, written, and signed in the handwriting of the testator. From theicr examination, these witnesses stated their individual grave fears and serious doubts of the genuineness of the handwriting of the testator, yet all had qualified themselves by testifying that each had known the testator for many years, had had business dealings with him, knew his handwriting and signature because of their long contact, and was thoroughly familiar therewith. They likewise assigned the further reason that several documents had been presented, some by the applicants for probate, and one document by the heir representing the minority, all purporting to be the last testaments and codicils of the testator, and a few thereof showing distinct variance of writing. All of these facts, gathered from four successive interrogations of eight qualified witnesses, naturally aroused my deep concern and sus
 
 *221
 
 picion. It was then that the applicants who had presented themselves to me on the four occasions mentioned presented a document and two slips of paper to a judge of the civil district court of Orleans parish, who in turn probated the testaments. The majority who were thus successful, then filed with me the certified copy of the probate proceedings in Orleans parish requesting an order giving full force and effect thereto. Upon my refusal to recognize the validity of these proceedings writs of certiorari, mandamus, and prohibition were issued by this honorable court upon the application of the relator in this present instance. These writs were later recalled.
 

 “Under such a state of facts, I therefore insisted upon strict proof in accordance with our law of procedure. My grave fears, besides my interpretation of the law as I have endeavored to state herein, prompted me to insist upon the presence of the attesting witnesses, where I may qualify them, present them all of the documents purporting to be testaments and codicils, on the relation of all the presumptive heirs, interrogate them as to their respective quality and validity, all to the end that I might satisfy my conscience and thereupon order, should sufficient proof be submitted, the execution of the testament so proved up.
 

 “I accordingly respectfully submit these reasons to this honorable court for such orders as it may deem just and proper in the premises.
 

 “Respectfully submitted,
 

 “[Signed] James D. Simon,
 

 “Judge Sixteenth Judicial District of Louisiana.”
 

 For the reasons assigned by the district judge, the writs heretofore issued are now recalled, and relator’s application is ordered dismissed, at her costs.
 

 O’NIELL, C. J., dissents.