An earlier phase of this matter has already been before us (17 So.2d 495), but we deem it advisable to restate such facts as are necessary to a clear understanding of the questions which are now presented. Mrs. Innis Patterson Wolf died in New Orleans in which city she was domiciled on October 27, 1942, leaving movable property located here. On June 7, 1943, her *Page 215 
mother, Mrs. Maria Thompson Patterson, provoked the opening of succession proceedings and, alleging that the decedent had left no valid will, she prayed that letters of administration be issued to her.
On June 16, 1943, Mrs. Frances Hirn Baker and Captain Hoyt Sherman Baker appeared in these succession proceedings and, averring that the decedent had left a last will and testament executed in the State of Arkansas on June 8th, 1942, and that in that will they had been named sole legatees, opposed the application of Mrs. Patterson for letters of administration and prayed that it be dismissed. On the next day, June 17, 1943, Mrs. Baker filed another petition in these proceedings presenting the alleged will of the decedent and praying that it be admitted to probate and ordered registered and executed.
The will was therefore admitted to probate. Subsequently counsel for Mrs. Patterson called to the attention of the District Judge the fact that the presumptive heirs of the decedent had not been notified and the judge thereupon rescinded the order probating the will and reserved all rights to all parties. Mrs. Baker then sought to probate the will by taking the deposition of the attesting witnesses, all of whom lived and were located outside of the State of Louisiana. Counsel for Mrs. Patterson contended that such testimony could not be taken by deposition and cited Succession of Lewis,177 La. 212, 148 So. 29. Apparently no ruling was made on this objection and the interrogatories and cross interrogatories were sent to the three witnesses, Brooks Hays, an attorney, and Mr. and Mrs. H.T. Buchanan. Mr. Hays answered both the interrogatories and the cross interrogatories but Mr. and Mrs Buchanan refused to answer the cross interrogatories. Mr. Hays' testimony which, as we have said, was taken by deposition and who is a practicing attorney in the state of Arkansas, showed that the will was in legal form according to the laws of the state of Arkansas and that all of the formalities required by the laws of that state had been complied with in its execution. He also stated that, in his opinion, Mrs. Wolf possessed testamentary capacity at the time of the execution of the will.
When the depositions were returned to the Civil District Court and it was discovered that Mr. and Mrs. Buchanan had failed to answer the cross interrogatories, it became apparent that their depositions were inadmissible and that additional proof, if any additional proof was available and admissible, must be resorted to and counsel for Mrs. Baker offered to make that necessary proof by tendering the testimony of persons residing within the jurisdiction of the court. It was contended that such proof could be made only by the attesting witnesses. This contention was upheld by the District Court and appeal was had to this court. After discussing all of the intricate legal questions which were involved, we held that the District Court should have accepted the testimony of the local witnesses which was tendered on behalf of the proponents of the will. The matter was ordered remanded to the Civil District Court for further proceedings. Application for writ of certiorari was made to the Supreme Court and that court refused to grant such a writ having found the judgment of this court to be "correct."
Thereupon Mrs. Patterson filed in the Civil District Court written opposition to the probating of the will, giving the following reasons: 1. That the testatrix "lacked testamentary capacity and was mentally incapable of making a will." 2. That the opponent had no means of knowing that the formalities according to the laws of Arkansas were complied with. She therefore charged that they had not been complied with for the following reasons: (a) That the testatrix did not sign the purported will; (b) that the testatrix did not present the said purported will to the witnesses and declare it to be her last will and testament; and (c) that the purported witnesses did not sign as witnesses in the presence of the testatrix and of each other. 3. That the typewritten portion of the purported will "is, in fact, a carbon copy of some other instrument." 4. That the purported will "contains erasure of several letters."
Counsel for Mrs. Baker offered the will itself and the depositions of Brooks Hays. He then called Mrs. Frances B. Hirn to the stand and she testified that she had known the testatrix for many years and that she recognized the signature of the testatrix, being well acquainted with her handwriting and having seen her write.
He then called as a witness Miss Alberta Kinsey, who identified the signature as that of the testatrix. He then produced as a witness Mrs. H.E. Buchanan, mother of H.T. Buchanan, one of the witnesses to the will, who identified the signature *Page 216 
of H.T. Buchanan as that of her son and who stated that at the time he was living at 519 Palm Street, Little Rock, Arkansas, which was the address given as the address of the said Buchanan on the will itself. This witness also identified the signature of Mrs. H.T. Buchanan, her daughter-in-law. F.C. Buchanan was then produced. He is a brother of H.T. Buchanan and he testified that he recognized the signature of his brother, H.T. Buchanan, and of his sister-in-law, Mrs. H.T. Buchanan, who was also living with her husband at 519 Palm Street at the time of the execution of the will.
Frank J. Brennan was then produced and he testified that he recognized the signature of H.T. Buchanan and that he had seen him write his name.
No testimony was offered to overcome this testimony and to show that the signatures were not genuine but counsel for Mrs. Patterson then offered evidence by which he sought to prove that the testatrix lacked testamentary capacity. This evidence consisted of testimony of herself, a police officer who had found in the room, in which the decedent had committed suicide, a document apparently written by her, and the testimony, taken by consent out of court, of Dr. L.A. Golden, a physician of much experience and admittedly an expert in the treatment of mental diseases.
After hearing this evidence, the judge of the District Court refused to admit the will to probate giving in writing his reasons for this refusal. From his judgment refusing to probate the will Mrs. Baker has appealed.
[1] In his reasons the District Judge said that in the first instance he had refused to probate the will not because of a view that the testimony of other witnesses than those who attested the will was inadmissible but because the evidence of such other witnesses was not offered but was merely tendered. He stated too that after the matter was remanded, the evidence was actually offered and that "proof was actually made." He finds, however, that though the evidence was offered and proof was actually made, this proof, though it would have been sufficient to establish the validity of a will in an uncontested case, is not sufficient since the will here is opposed. He cites as authority for the view that where a will is opposed the evidence must be considerably stronger than where there is no opposition; Succession of Lefort, 139 La. 51, 71 So. 215, Ann.Cas.1917E, 769. In this case the Supreme Court quoted, with approval, from Succession of Myra Clark Gaines, 38 La. Ann. 123, as follows:
" 'We understand that rule (C.C. 1665) to apply to the probate of a will which is not opposed, as a part of the mortuary proceedings. * * * But a different rule applies when the probate of the will is opposed ab initio, on the ground that it is a fraud and a forgery. * * * Under such an issue the doors of justice are opened for the introduction of legal evidence, under all the forms which prevail in all contested facts or cases; * * *.' " 139 La. 51, 71 So. 219]
We understand the rule to be that where there is a contest any pertinent evidence may be introduced and that the parties are not limited to any particular group of witnesses. It must be remembered that in the case at bar there is practically no evidence concerning the genuineness of the signatures other than that to which we have referred. Whether the particular evidence was admissible was a question which we thought had been entirely disposed of on the first appeal.
The case at that time very clearly presented a "contest." The litigation commenced with a petition filed by Mrs. Patterson in which she alleged that the decedent had left no "valid" will. So that from the first appearance of the present appellee — and that appearance was in the first document filed in this proceeding — she has contested the validity of the will which is offered for probate, and in our decision we held that the very evidence now in question was admissible, and the Supreme Court refused to grant a writ of review. Therefore the question of whether we were correct is no longer an open one, and since our opinion was rendered in a contested case, we do not understand how it can now be said that the rule which we laid down is inapplicable for the reason that it has application only where there is no contest.
[2] Much ado is made by counsel for appellee over the fact that when the interrogatories and cross interrogatories were submitted to Brooks Hays in Arkansas only a photostatic copy and not the will, itself, was sent to him for examination in connection with his testimony. Our attention is directed to the Succession of Drysdale, 121 La. 816, 46 So. 873, 882, and we are told that that decision is authority for the view that evidence taken in connection with a photostatic copy of a will has no probative *Page 217 
value. We do not so read that decision. So far as the photostatic copy of the will was concerned, all that the court there held was that that copy had not been properly authenticated; that there was not sufficient proof that it was in truth a copy of the original will. In its original opinion the court said:
"We do not think that the photographic copy of what purported to be the original instrument was properly before the court. The photographer who made it was not examined as a witness in regard to it, nor was the clerk of the Surrogate Court. It was placed before the court upon a simple affidavit of the photographer that it had been brought to him by the clerk of the Surrogate Court, declaring what it was."
And on rehearing the court said very plainly that it had not rejected the photographic copy because it was not the original will but merely because "* * * the photographic copy of the will and signature produced below is not sufficiently authenticated and proved to serve as a substitute for the original." If counsel for appellee here had had any doubt whatever that the photographic copy sent to Brooks Hays was not an actual copy, he could have objected to it on that ground. It must be remembered too that the photographic copy is not offered for probate as it was offered in the Drysdale case but was merely offered for use in connection with the testimony of one of the witnesses.
[3] Counsel complains that the testimony of Miss Alberta Kinsey does not sufficiently show that the signature of the testatrix is genuine and he points to the following testimony given by this witness:
"Q. Now, I show you a document purporting to be a last will and testament of Innes Patterson Wolf, which bears the signature Innes Patterson Wolf, and I ask you to examine that document and tell me whether or not you recognize the signature as that of Innes Patterson Wolf. A. I do, yes, recognize the first word, Innes, very well, because she always signed her letters Innes, and I know that better than I know the rest of it, but the Innes is like her writing, yes.
"Q. Did she ever write in your presence? A. Oh, yes.
"Q. Did she autograph any books for you? A. She did.
"Q. She was a writer, was she not? A. Yes.
"Q. And you have in your possession some of her authographed books? A. Yes, I have.
"Q. And you recognize the signature on this document? A. As far as I can see, it looks like her writing."
We do not think that this testimony evidences any doubt on the part of Miss Kinsey as to the genuineness of the signature. All that it shows is that she was considerably more familiar with the first name of the signature than she was with the balance of the name but that she was perfectly willing to testify that the whole signature was genuine.
[4] The question raised by the contention that the typewritten part of the will is not the first sheet made by the typewriter but is a carbon copy of the first sheet has, we think, no force whatever. According to the testimony of Mr. Hays, the laws of Arkansas were complied with when the testatrix signed the document and handed it to the attesting witnesses and said that it was her will. We cannot see any possible reason for holding that such a document must be the first sheet and may not be one of the carbons. If the signature is the original signature and the signatures of the witnesses are originals, the fact that the typewritten part is in the ink from carbon paper rather than from ink of the typewriter is of no importance.
[5] The contention that there are erasures in the will is not supported by any evidence and so far as we can see the only part of the will in which any change has been made is in an unimportant particular in the paragraph concerning the attesting by the witnesses. The will, as originally written, contained the words "at the time of our assigning." The first two letters, as, in "assigning" were stricken out. We can attach no importance to this fact.
[6] The contention was originally made that no proof of a will may be made by deposition. This contention was based on the Succession of Lewis, supra, and it is again made now as an objection to the introduction of the deposition of Brooks Hays. Succession of Lewis is not authority for the view that the depositions of Mr. Hays may not be admitted, primarily for the reason that the Lewis case involved an olographic will made in Louisiana and the reasons given in that case for the requirement that the attesting witnesses, themselves, be present were based on Art. 1655 *Page 218 
of the Civil Code and Arts. 938, 939 and 940 of the Code of Practice. We think, as our original opinion indicated, that these articles do not apply in the case of a will such as this was. It was not olographic and it was not made in Louisiana. That was one of the principal points made in the first instance and we have given our views on it in our original opinion.
The remaining question is whether or not the testatrix possessed testamentary capacity. The record does not contain any evidence whatever concerning the mental condition of the testatrix at the time of the confection of the will except the testimony of Brooks Hays who states that, in his opinion, she had full testamentary capacity. It is contended that the testimony of Mr. Hays on this point is inadmissible for the reason that he is not a doctor nor a mental expert of any kind. There is authority for the view that opinion evidence of a layman as to the mental capacity of a testator or of any other person may not be offered unless it is accompanied by a statement of the facts on which the opinion is based. Chandler v. Barrett, 21 La. Ann. 58, 99 Am.Dec. 701; Hibernia National Bank, et al. v. Samuel Smith, et al., 27 La. Ann. 59; State of Louisiana v. Eva Smith, 106 La. 33, 30 So. 248 and State v. Madena, 165 La. 474, 115 So. 661.
[7] But even if the evidence of Mr. Hays on this question is entirely eliminated, the case of the opponent to the will will not be bettered because it is well settled that there is a presumption of testamentary capacity and that this presumption must be overcome by the opponent to the will. Succession of Brugier, 146 La. 29, 83 So. 366; Succession of Mithoff,168 La. 624, 122 So. 886; Succession of Knight, La. App., 151 So. 230; Rostrup v. Succession of Spicer, 183 La. 1087, 165 So. 307; Succession of Edgar, 184 La. 775, 167 So. 438; Wilcox et al. v. City of Hammond, et al., 163 La. 489, 112 So. 375; Landry v. Landry, 196 La. 490, 199 So. 401.
[8] While it is true that this presumption may be overcome by proof, we do not find in this record anything whatever to show that the testatrix lacked mental capacity when the will was made and, of course, that is the time to which we must look to determine whether there existed the necessary mental capacity. Mrs. Patterson testified that for sometime her daughter had been eccentric and that she was addicted to the use of liquor and drugs. Dr. Golden, who first began the treatment of the decedent about three months after the date of the will, shows that though she was very despondent and did some rather unusual things, there were other times at which she would "clear up and appear quite normal." Dr. Golden stated that the testatrix had told him on many occasions that she "had always hated her mother" and "didn't want to have anything to do with her." This fact that she hated her mother, and the further fact that she left nothing to her mother, are pointed to as evidencing a disordered mind and counsel cites many authorities to the effect that unnatural dispositions in themselves evidence lack of testamentary capacity. Chandler v. Barrett, supra; Godden v. Executors of Edward Burke et al., 35 La. Ann. 160. We cannot see, without knowing all of the facts that the mere fact that the testatrix left nothing to her mother is in itself evidence of a mental condition which would prevent the making of a valid will or which would overcome the presumption against insanity. Another authority, Wilcox v. City of Hammond et al., supra, holds that the mere failure to provide for a member of the family is not an evidence of insanity. The document left by the decedent in the hotel room from which she committed suicide by jumping out of the window, does, of course, appear to be written by a person who at that time was not in the possession of a completely sound mind but that event occurred several months after the confection of the will. And surely her mental condition at that time cannot be pointed to as evidencing a lack of testamentary incapacity some four months before.
Since the District Judge has found that proof of the genuineness of the signatures has been adduced, and since we too think that such proof has been made, we see no reason for refusing to admit the will to probate.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and that the matter be, and it is, remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law and consistent with the views herein expressed.
Reversed and remanded.
WESTERFIELD, J., absent, takes no part. *Page 291